Pg. 9

THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| DAVID SIMMONS,<br><br>        Appellant,<br><br>v.<br><br>STATE OF ALASKA,<br><br>        Appellee. | Court of Appeals No. A-4475<br>Trial Court No. 4BE-S90-902CR<br><br>MEMORANDUM OPINION<br><br>AND JUDGMENT*<br><br>[No. 3099 - March 22, 1995] |

Exhibit #2

Appeal from the Superior Court, Fourth Judicial District, Bethel, Dale O. Curda and Niesje J. Steinkruger, Judges.

Appearances: Randall S. Cavanaugh, Kirk Robinson Cavanaugh, P.C., Anchorage, for Appellant. Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: Bryner, Chief Judge, Coats and Mannheimer, Judges.

COATS, Judge.

A jury convicted David Simmons of burglary in the first degree, a class B felony, assault in the second degree, a class B felony, assault in the third degree, a class C felony, and misconduct involving weapons in the first degree (felon in possession of a concealable firearm), a class C felony. AS 11.46.300(a)(1); AS 11.41.210(a)(1); AS 11.41.220(a)(1); AS 11.61.200(a)(1). Simmons appeals his convictions to this court. We reverse.

---

   * Entered pursuant to Appellate Rule 214 and Guidelines for Publication of Court of Appeals Decisions (Court of Appeals Order No. 3).

Exc. 137

Ex. 2, p. 1

David Simmons and E.A. were involved in a romantic relationship beginning in August of 1990. On September 25, 1990, at around 6:00 p.m., E.A. called the Bethel police complaining that Simmons was in her house and would not leave. When a police officer arrived at the scene Simmons left E.A.'s house.

About 1:00 a.m. the next morning, on September 26, E.A. again called the police and reported an assault. Sergeant John Bilyeu and Officer John Hodges responded to the call. The officers found E.A. in a very excited emotional state and bleeding from her head. She reported that Simmons had broken into her house and had assaulted her with various household items -- a flashlight, a humidifier, a telephone, and a babyswing. She stated that when Simmons fell asleep, she left and called the police from her sister's house. The police convinced E.A. to go to the hospital for treatment of her injuries.

The police next went to E.A.'s house. They found Simmons asleep on the couch in E.A.'s living room. He had blood on the front of his pants. The police arrested Simmons.

The police then went to the hospital to talk to E.A.. She told them about a prior occasion during which Simmons had pointed a gun at her head and threatened to kill her. This incident occurred on September 4, 1990. Simmons was ultimately convicted for assault and misconduct involving weapons for this incident. E.A. told the police that Simmons had called a friend, Jose Mannie Herrera, and asked him to bring the gun to E.A.'s home.

E.A. indicated that the gun was being kept at a house the police knew belonged to Herrera.

Based on this information, the police obtained a search warrant for Jose Herrera's residence to search for and seize the revolver which Simmons allegedly used to commit the September 4 assault.

On September 26, 1990, the police entered Herrera's residence pursuant to the search warrant at approximately 4:00 a.m. The police forcibly opened the door and found Herrera unclothed in bed with a girlfriend. Sgt. Bilyeu stated that it was apparent that Herrera's girlfriend had been drinking but Herrera "appeared to be relatively sober." At some point during the search, Sgt. Bilyeu tape-recorded a statement from Herrera. In this statement, in response to police questioning, Herrera stated that he had previously taken the revolver over to E.A.'s residence at Simmons' request.[1] The police seized the revolver from Herrera's residence.

---

[1] Herrera identified the gun as having belonged to David Simmons. He stated that he had bought the weapon from Simmons for $200. Then Herrera made the following statements:

> SGT. BILYEAU: Okay. Have you had any occasion to let him [Simmons] borrow the gun?
>
> HERRERA: No, never did. (indiscernible)
>
> Q: Did you take it over to the trailer where he lives three weeks ago?
>
> A: Three weeks ago? That was . . .
>
> Q: He was having an argument with his girlfriend E.A.? (indiscernible)

A: I don't-- I don't recall because that's-- that's a long time.

Q: Well, can you recall him phoning you and asking you to bring the gun over and you brought it over in a bag? And you he [sic] borrowed it for a while and then gave it back to you and you went home, do you remember that occurring?

A: I remember having it-- I-- I remember having it in a bag, but -- I probably-- I probably did bring it over, you know. (indiscernible)

Q: Yeah; it's not alleged that you participated in the assault that occurred that day, it's alleged that you did bring the gun over.

A: Yeah.

Q: And then you took it away. Do you remember that?

A: Yeah, yeah.

Q: Did David tell you he was going to scare his girlfriend or . . .

A: No, he didn't say anything like that, I left in a hurry and, you know, I didn't ask to stay over there.

Q: Okay. Well, since . . .

A: They were-- they were having an argument, so . . .

Q: They were having an argument?

A: Yeah. I recall now they were-- they were having an argument so -- but I-- I didn't stay there, you know, about three or four minutes and then I took off.

Q: All right. So since it's now 4:06 in the morning, we may contact you in the future, get a little more details on

4

3099

Exc. 140

Herrera later testified at the grand jury proceeding and recanted his original statement, claiming that he had never taken a gun to E.A.'s house for Simmons.

On appeal, Simmons claims that Superior Court Judge Dale O. Curda erred in allowing the state to introduce Herrera's statement as evidence against him at trial. He contends that admission of this evidence violated the confrontation clause of the Alaska Constitution. Alaska Const. art. I, § 11. The state contends that the statement was properly admitted as a statement against interest under Alaska Evidence Rule 804(b)(3) which provides:

> (b) **Hearsay Exceptions.** The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
>
> (3) *Statement Against Interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

It is uncontested that Herrera was unavailable as a witness. Herrera asserted his right to refuse to testify under the Fifth Amendment to the United States Constitution and article I, §

---

> this. But I want to thank you for your cooperation and your assistance.

9 of the Alaska Constitution. In order to properly admit Herrera's statement, the state needed to show that at the time Herrera made the statement, the statement so far tended to subject him to criminal liability "that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." In addition, in order to pass muster under the confrontation clause, a hearsay statement is admissible against the accused only if it bears adequate "indicia of reliability."

> Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

Ohio v. Roberts, 448 U.S. 56, 66 (1980) (footnote omitted). See Hawley v. State, 614 P.2d 1349, 1358 (Alaska 1980); Charles v. State, 780 P.2d 377, 382 (Alaska App. 1989).

The state contends that Herrera's statement that he took the gun over to E.A.'s residence at Simmons' request was reliable. By making this statement, Herrera subjected himself to potential criminal liability as an accomplice to Simmons' assault. The state argues that Herrera would not have made such a statement unless it were true.

This court has previously dealt with declarations against penal interest. In Linton v. State, 880 P.2d 123, 129 (Alaska App. 1994)(citing Lee v. Illinois, 476 U.S. 530, 544 n.5 (1986)), we noted that confessions of an accomplice that also implicate a criminal defendant do not fall under a firmly rooted exception to

the hearsay rule. In <u>Shakespeare v. State</u>, 827 P.2d 454, 459-60 (Alaska App. 1992)(footnote omitted), we stated:

> Indeed, we note that a strong argument has been made that all statements given during a police interrogation which implicate both the declarant and the accused should categorically be excluded from the statement against interest exception to the hearsay rule, because such statements always involve a great danger that the declarant may be motivated by an express or implied threat of prosecution or promise of leniency. J. Weinstein and M. Berger, 4 <u>Weinstein's Evidence</u> § 804(b)(3)[03], at 804-150 (1991). This is one factor that led the original drafters of Federal Rule 804(b)(4) to include the following clause in the statement against interest exception:
>
>> This exception does not include a statement or confession offered against the accused in a criminal case, made by a codefendant or other person implicating both himself and the accused.
>
> <u>Id.</u>  Eventually, this language was deleted from the rule on the basis that it was not needed, which, according to Weinstein, "means that the Rule should be interpreted to include this language." <u>Id.</u> at 804-151.

In the present case, Herrera, a potential accomplice to Simmons' assault against E.A., made statements to the police that were incriminatory to both Simmons and himself. However, there is a substantial question whether these statements were against Herrera's interest. Under the facts of this case it is possible that Herrera was "motivated by an express or implied threat of prosecution or promise of leniency." <u>Shakespeare</u>, 827 P.2d at 460.

Assuming that Judge Curda could properly find Herrera's statement to be against his penal interest, following our reasoning in <u>Linton</u>, Herrera's statement does not fall under a firmly rooted hearsay exception and therefore must be buttressed by "particularized guarantees of trustworthiness" in order to meet the requirements of the confrontation clause.

> For purposes of determining whether "particularized guarantees of trustworthiness" exist in a given case, the totality of the circumstances must be considered, but "the relevant circumstances include only those that surround the making of the statement and that render the declarant particularly worthy of belief." <u>Idaho v. Wright</u>, 497 U.S. 805, 819 (1990). Evidence that is not intrinsically related to the circumstances in which a hearsay statement was made but merely corroborates the statement's truthfulness cannot properly be considered, since "the use of corroborating evidence to support a hearsay statement's 'particularized guarantees of trustworthiness' would permit admission of a presumptively unreliable statement by bootstrapping on the trustworthiness of other evidence at trial." <u>Id.</u> at 823.

<u>Linton</u>, 880 P.2d at 129. The Supreme Court's opinion in <u>Idaho v. Wright</u> makes it clear that the trustworthiness of Herrera's statement must be gauged according to the context in which the incriminating remarks were made. The statement cannot be credited simply because it meshes with the testimony of other witnesses.

We conclude that Herrera's statement did not have sufficient indicia of reliability to be admissible against Simmons under the confrontation clauses of the United States and Alaska Constitutions. There is good reason to question the reliability of Herrera's statement. Herrera made the statement after the

police unexpectedly broke into his house at 4:00 in the morning while he was in bed unclothed with his girlfriend. Herrera may not have been entirely sober or awake. Herrera made his statements implicating Simmons in response to leading and suggestive questions by the police. Herrera's statements to the police were vague and somewhat contradictory. As we have previously stated, it is possible that Herrera was "motivated by an express or implied threat of prosecution or promise of leniency." Later, under oath, Herrera retracted the statements which he made to the police.

In setting out reasons to question the accuracy of the statements which Herrera made, we do not mean to imply any criticism of the police conduct in this case or to conclude that there is not a strong argument to suggest that Herrera told the truth when he stated that he took the revolver over to E.A.'s residence. The point is that there are substantial reasons to question Herrera's statements. In Williamson v. United States, 114 S.Ct. 2431, 2434 (1994), the Supreme Court stated:

> [O]ut-of-court statements are subject to particular hazards. The declarant might be lying; he might have misperceived the events which he relates; he might have faulty memory; his words might be misunderstood or taken out of context by the listener. And the ways in which these dangers are minimized for in-court statements -- the oath, the witness' awareness of the gravity of the proceedings, the jury's ability to observe the witness' demeanor, and, most importantly, the right of the opponent to cross-examine -- are generally absent for things said out of court.

In particular, the Supreme Court has recognized that the "truth-finding function of the Confrontation Clause is uniquely threatened

Case 4:03-cv-00013-RRB   Document 59-3   Filed 05/25/2006   Page 10 of 11

Pg. 18

when an accomplice's confession is sought to be introduced against a criminal defendant without the benefit of cross-examination." Lee v. Illinois, 476 U.S. 530, 541 (1986). See Bruton v. United States, 391 U.S. 123, 141 (1968); Douglas v. Alabama, 380 U.S. 415 (1965).

    Herrera's statement to the police following their forcible entry into his home falls within a category of statements that do not have inherent guarantees of trustworthiness and that are admissible only if accompanied by significant indicia of reliability. We conclude that Herrera's statement did not meet this standard and that it would violate the confrontation clauses of both the United States and Alaska Constitutions to admit this statement where Herrera was not subject to cross-examination. The admission of Herrera's out-of-court statement at Simmons' trial was error.

    The state has not argued that erroneous admission of Herrera's statement could constitute harmless error. Since the error in question was a violation of Simmons' confrontation rights, we would have to find the error harmless beyond a reasonable doubt. See Chapman v. California, 386 U.S. 18 (1967). It appears to us that Simmons' case was a classic example of Simmons' word against E.A.'s word. Although there was evidence corroborating E.A.'s version of the facts, Herrera's statement that he brought the gun over to E.A.'s house at Simmons' request was a substantial piece of

10

3099

Exc. 146

Ex. 2, p. 10

evidence corroborating E.A.'s account. It therefore does not appear that the error would be harmless.

The convictions are REVERSED.

---

² Simmons contends that Judge Curda erred in failing to dismiss the indictment. However, Simmons has not designated the grand jury transcript as part of the record on appeal. He has consequently waived this argument. Simmons next contends that Judge Curda erred in denying Simmons' motion to suppress in which Simmons contended that the police illegally seized the firearm during the search of Herrera's residence. We conclude that E.A.'s statements to the police provided probable cause for the magistrate to issue a warrant for the firearm. Simmons also contends that Judge Curda erred in refusing to confer immunity on Herrera and in refusing to dismiss the case. See State v. Echols, 793 P.2d 1066 (Alaska App. 1990). Such action by the court would only be appropriate in extremely rare situations such as outlined in Echols. Simmons' case does not present such facts. In addition, Simmons contends that the state presented insufficient evidence on the charge of assault in the second degree that he used a dangerous instrument. However, viewing the testimony in the light most favorable to the state, a reasonable jury could conclude beyond a reasonable doubt that the items which Simmons used to assault E.A. were used as dangerous instruments. See Dorman v. State, 622 P.2d 448, 453 (Alaska 1981). Because we are reversing this case, we find it unnecessary to reach the other issues which Simmons raises.