IN THE COURT OF APPEALS OF THE STATE OF ALASKA

DAVID SIMMONS,                    )
                                  )
            Appellant,            )
                                  )
      vs.                         )
                                  )
STATE OF ALASKA,                  )
                                  )
            Appellee.             )
_____ )

No. A-4475
Superior Court No. 4BE-S90-902 CR

ON APPEAL FROM THE SUPERIOR COURT
FOURTH JUDICIAL DISTRICT
SUPERIOR COURT JUDGE DALE CURDA

<u>BRIEF OF THE APPELLANT</u>

RANDALL S. CAVANAUGH
900 W. 5th Avenue
Suite 730
Anchorage, Alaska 99501
(907) 279-1659

By: Randall S. Cavanaugh
Alaska Bar # 8812215

Filed *August 31, 1993* in the
COURT OF APPEALS for the
STATE OF ALASKA

Jan Hansen, Clerk of
Appellate Courts

By: _____
      Deputy Clerk of the
      Appellate Courts

Ex. D, p. 1

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

DAVID SIMMONS,                    )
                                  )
            Appellant,            )
                                  )
      vs.                         )
                                  )
STATE OF ALASKA,                  )
                                  )
            Appellee.             )
_____  )

No. A-4475
Superior Court No. 4BE-S90-902 CR

ON APPEAL FROM THE SUPERIOR COURT
FOURTH JUDICIAL DISTRICT
SUPERIOR COURT JUDGE DALE CURDA

BRIEF OF THE APPELLANT

                          RANDALL S. CAVANAUGH
                          900 W. 5th Avenue
                          Suite 730
                          Anchorage, Alaska 99501
                          (907) 279-1659

                          By: Randall S. Cavanaugh
                          Alaska Bar # 8812215

Filed *August 31, 1993* in the
COURT OF APPEALS for the
STATE OF ALASKA

Jan Hansen, Clerk of
Appellate Courts

By: _____
      Deputy Clerk of the
      Appellate Courts

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

DAVID SIMMONS,                    )
                                  )
            Appellant,            )
                                  )
      vs.                         )
                                  )
STATE OF ALASKA,                  )
                                  )
            Appellee.             )
_____ )

No. A-4475
Superior Court No. 4BE-S90-902 CR

## CERTIFICATION

I certify that:

     /xx/ This document and its attachments do not contain information that is confidential under AS 12.61.110 or the name of a victim of a crime listed in AS 12.61.140

     / / This document and its attachment do contain information that may be placed in a court file under an exception listed in AS 12.61.130(b). This information appears at _____. This document and its attachments do not contain the name of a victim of a crime listed in AS 12.61.140.

_____8/26/93_____          _____
DATE                       RANDALL S. CAVANAUGH

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.........................................iii

RULES AND STATUTES.........................................viii

JURISDICTION.................................................1

STATEMENT OF FACTS...........................................1

ARGUMENT...................................................13

STANDARDS OF REVIEW........................................12

STATEMENT OF ISSUES ON REVIEW.............................12

    1. Did the trial court err when it failed to recuse itself?.13

    2. Did the trial court err when it failed to honor the defendant's pre-emption of the trial court?...........20

    3. Did the trial court err when it failed to sever counts I and II from counts III and IV.........................24

    4. Did the trial court err when it denied the motion to dismiss the case?...................................28

    5. Did the trial court err when it denied the defendant's motion to suppress the evidence seized from Mr. Herrera's residence?.............................29

    6. Did the trial court erred when it failed to allow Mr. Herrera to testify or dismiss the case?...............30

    7. Did the trial court err in allowing the statement of Mr. Herrera to be admitted and depriving Mr. Simmons the right the right to confront him for the purpose of cross-examination?.................................34

    8. Did the trial court err in limiting Mr. Simmons' cross-examination of E.A..................................37

    9. Did the trail court abuse its discretionin excluding evidence that was probative of a material proposition to the defense case?................................45

    10.Was there insufficient evidence to support a conviction of assault in the second degree?..........................47

i

11. Did the trial court err when it denied the statutory and non-statutory mitigators at sentencing?................50

12. Was the sentence imposed excessive and should the unverified material been struck?.......................57

CONCLUSION................................................60

ii

TABLE OF AUTHORITIES
CASE LAW

Abdulbaqui v. State,
708 P.2d 1211 (Alaska App. 1986)...................................24

Adams v. State,
706 P.2d 1183 (Alaska App. 1985).................................29

Alcorta v. Texas,
355 U.S. 28, 78 S.Ct. 103, 2 L. Ed.2d 9 (1959)..................42

Amidon v. State,
604 P.2d 575 (Alaska 1979)........................14, 16, 18, 35

Babcock v. State,
683 P.2d 721 (Alaska App. 1984)..................................47

Bolhouse v. State,
687 P.2d 1166 (Alaska App. 1984).................................58

Bowlin v. State,
643 P.2d 1 (Alaska App. 1982)....................................18

Braaten v. State,
705 P.2d 1311 (Alaska App. 1985).................................56

Cano v. Anchorage,
627 P.2d 660 (Alaska App. 1981)..................................47

Chapman v. California,
386 U.S. 1824 (1967).......................13, 29, 30, 34, 37

Crane v. Kentucky,
476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986)............44

Davis v. Alaska,
415 U.S. 308 (1974)..............................................42

Degler v. State,
741 P.2d 659 (Alaska App. 1987)............................12, 50

Dimmick v. State,
573 P.2d 616 (Alaska 1970).......................................30

Dorman v. State,
622 P.2d 488 (Alaska 1981)...................................13, 48

Echols v. State
793 P.2d 1066 (Alaska App. 1990)..........................8, 31, 32

iii

Elson v. State,
633 P.2d 292, 301 (Alaska App. 1981)...............................53

Evan v. State,
550 P.2d 830 (Alaska 1976).......................................43

Farmer v. State,
746 P.2d 1300 (Alaska App. 1987)................................59

Feichtinger v. State,
779 P.2d 344 (Alaska App. 1989).................................13

Galauska v. State,
527 P.2d 459 (Alaska 1974).......................................29

Giel v. State,
681 P.2d 1364 (Alaska App. 1984)................................30

Hawley v. State,
614 P.2d 1349 (Alaska 1980)........................33, 34, 36, 43

Hutchings v. State,
518 P.2d 767 (Alaska 1974)...........................43, 45, 47

Johnson v. State,
730 P.2d 1750 (Alaska App. 1986)................................25

Jones v. State,
765 P.2d 197 (Alaska App. 1988)............................50, 59

Juneby v. State,
665 P.2d 30 (Alaska App. 1983)............13, 50, 51, 52, 55, 56

Konrad v. State,
763 P.2d 1369 (Alaska App. 1988)..........................49, 50

Kugzruk v. State,
436 P.2d 962 (Alaska 1968).......................................46

Lacquement v. State,
644 P.2d 856 (Alaska App. 1982)...........................58, 59

Lerchenstein v. State,
697 P.2d 312 (Alaska App. 1985).................................26

Liljeberg v. Health Services Acquisition Corp.,
486 U.S. 847, 108 S.Ct. 2194,
100 l.Ed. 2d 855 (1988)....................................19, 20

Maynard v. State,
652 P.2d 489 (Alaska App. 1982).................................24

iv

McClain v. State,
519 P.2d 811 (Alaska 1974)....................................13, 57

McConkey v. State
504 P.2d 823 (Alaska 1972)........................................31

Moore v. State,
709 P.2d 498 (Alaska App. 1985)...................................26

Montes v. State,
669 P.2d 961, (Alaska App. 1983)..................................24

Mutschler v. State,
560 P.2d 377 (Alaska 1970)........................................59

Napue v. Illinois,
360 U.S. 264, 79 S.Ct. 1173, 360 L.Ed. 2d 1217 (1959)...........42

Newcomb v. State,
779 P.2d 1240 (Alaska App. 1989)..................................36

Nell v. State,
642 P.2d 1361 (Alaska App. 1982)..................................25

Nelson v. State,
619 P.2d 480 (Alaska 1980)........................................57

Nukapigak v. State,
576 P.2d 982 (Alaska 1978)........................................53

Oksoktaruk v. State,
611 P.2d 521 (Alaska 1980)........................................25

Olden v. Kentucky,
488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988).............44

Peetook v. State,
655 P.2d 1308 (Alaska App. 1982)..................................54

Pennsylvania v. Ritchie,
480 U.S. 39, 107 S.Ct. 989, 94 l.Ed. 2d 40 (1987)...............44

Perotti v. State,
604 P.2d 575 (Alaska 1979)...............................13, 16, 18

Pruett v. State,
742 P.2d 257 (Alaska App. 1987)...................................54

Putnam v. State,
629 P.2d 35 (Alaska 1985).........................................29

v

Riley v. State,
608 P.2d 27 (Alaska 1980)..................................23

Shakespeare v. State,
827 P.2d 454 (Alaska App. 1992)....................36, 37, 43

Sharp v. Alaska,
Opinion 1233 at 13, (issued July 17, 1992)................24, 27

Siggelkow v. State,
648 P.2d 611, 613 (Alaska App. 1982)..........................48

Sluke v. State,
718 P.2d 394 (Alaska App. 1986)..............................17

State v. Ison,
744 P.2d 416, 418 (Alaska App. 1987).....................13, 28

Stevens v. State,
582 P.2d 621 (Alaska 1970)...................................27

Stumpf v. State,
749 P.2d 880, 901 (Alaska App. 1988).........................43

Thomas v. State,
566 P.2d 630 (Alaska 1977)...................................59

United States v. Abel,
469 U.S. 45, 105 S.Ct. 465, 469, 83 L.2Ed. 450 (1980)...........43

United States v. Abou Mussellem,
726 F.2d 906 (2nd Cir. 1984).................................47

United States v. Day,
591 F.2d 861, (D.C. Cir. 1978)...............................46

United States v. Masino,
275 R.2d 129 (3rd Cir. 1960).................................43

United States v. Musgrove,
483 F.2d 327, 338 (5th Cir. 1973) cert. denied 414 U.S. 1023, 94
S.Ct. 447, 38 L.Ed 2d 316....................................43

Vandiver v. State,
726 P.2d 195 (Alaska App. 1986)..............................29

United States v. Meester,
762 F.2d 867,  (11th Cir. 1983)..............................46

United States v. Snow,
521 F.2d 730 (9th Cir. 1975).................................36

vi

<u>Wamser v. State</u>,
587 P.2d 232 (Alaska 1978)......................................22

<u>Waters v. State</u>,
483 P.2d 199 (Alaska 1971)......................................57

<u>Webb v. State</u>,
527 P.2d 35 (Alaska 1974).......................................29

<u>Wettanen v. State</u>,
656 P.2d 1213 (Alaska App. 1983)................................49

<u>Whitton v. State</u>,
479 P.2d 302 (Alaska 1970)......................................50

<u>Willett v. State</u>,
(Alaska App. Opinion No. 1240, Issued July 31, 1992)............49

<u>Wood v. State</u>,
(Opinion No. 1241, issued August 14, 1992).....................43

<u>Young v. State</u>,
(App. No. 1285: issued February 26, 1993)......................48

OTHER AUTHORITIES

<u>Fed. Practice and Procedure;</u> 22 C. Wright and K. Graham,
<u>Evidence</u> 5214 at 265-66 (1978)................................47

vii

## RULES AND STATUTES

A.S.11.46.300(a)(1)...........................................1

A.S.11.41.210(a)(1)...........................................1

A.S.11.41.220(a)(1)...........................................1

A.S.11.61.200(a)(1)...........................................1

A.S.11.81.900(b)(11).........................................49

A.S.11.81.900(b)(50).........................................49

A.S.11.46.140................................................1

A.S.11.46.300................................................1

A.S. 12.55.125(c)........................................53, 54

A.S. 12.55.155(c)........................................51, 52

A.S. 12.55.155(d)........................................51, 52

A.S. 12.55.155(f)...........................................52

A.S. 22.07.020..............................................1

A.S. 22.20.020...........................14, 15, 16, 17, 21

A.Cr.R. 6..................................................29

A.Cr.R. 8(a)............................................24, 27

A.Cr.R. 14.............................................24, 27

A.Cr.R. 25.............................................21, 22

A.Cr.R. 53.................................................23

A.R.E. 401.................................................46

A.R.E. 403.................................................26

A.R.E. 404(b)..............................................25

A.R.E. 607.................................................46

A.R.E. 608.................................................44

A.R.E. 609.................................................44

viii

A.R.E. 613(b)..........................................45

Judicial Canon III.....................................14

28 U.S.C. 455..........................................19

### SPECIFIC CONSTITUTIONAL PROVISIONS, RULES AND STATUTES RELIED UPON

Alaska Constitution Art. I, Sec. 11, in pertinent part, states:

In all criminal prosecutions, the accused shall the right to a speedy and public trial, by an impartial jury of twelve,...to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

AS 11.41.210(a):
(a) person commits the crime of assault in the second degree if (1) with intent to cause physical injury to another person, that person causes physical injury to another person by means of a dangerous instrument;

AS 11.41.220(a):
(a) person commits the crime of assault in the third degree if that person recklessly
     (1) places another person in fear of imminent serious physical injury by means of a dangerous instrument;

AS 11.41.220(a):
(a) person commits the crime of assault in the third degree if that person recklessly
     (1) places another person in fear of imminent serious physical injury by means of a dangerous instrument;

AS 11.46.300 provides, in pertinent part, as follows:
     (a) A person commits the crime of burglary in the first degree if the person violates AS 11.46.310 and
     (1) the building is a dwelling;

AS 11.81.900 (b)(11): "dangerous instrument" means any deadly weapon or anything that , under the circumstances in which it was used, attempted to be used, or threatened to be used, is capable of causing death or serious physical injury."

AS 12.55.125(c)  The following factors shall be considered by the sentencing court and may aggravate the presumptive terms set out in AS 12.55.125:
     (2)  the defendant's conduct during the commission of the

ix

offense manifested deliberate cruelty to another person;

(4)    the defendant employed a dangerous instrument in furtherance of the offense;

(8)    the defendant's prior criminal history includes conduct involving aggravated or repeated instances of assaultive behavior;

(9)    the defendant knew that the offense involved more than one victim;

(10)    the conduct constituting the offense was among the most serious conduct included in the definition of the offense;

(12)    the defendant was on release under AS 12.30.020 or 12.30.040 for another felony charge or conviction or for a misdemeanor charge or conviction having assault as a necessary element;

(15)    the defendant has three or more prior felony convictions;

(19)    the defendant's prior criminal history includes an adjudication as a delinquent for conduct that would have been a felony if committed by an adult;

(21)    the defendant has a criminal history of repeated instances of conduct violative of criminal laws, whether punishable as felonies or misdemeanors, similar in nature to the offense for which the defendant is being sentenced under this section;

AS 12.55.125 (d)  The following factors shall be considered by the sentencing court and may mitigate the presumptive terms set out in AS 12.55.125;

(6)    in a conviction for assault under AS 11.41.200 - 11.41.230, the defendant acted with serious provocation from the victim;

(9)    the conduct constituting the offense was among the least serious conduct included in the definition of the offense;

(10)    before the defendant knew that the criminal conduct had been discovered, the defendant fully compensated or made a good faith effort to fully compensate the victim of the defendant's criminal conduct for any damage or injury sustained;

(13)    the facts surrounding the commission of the offense and any previous offenses by the defendant establish that the harm caused by the defendant's conduct in consistently minor and inconsistent with the imposition of a substantial period of imprisonment;

Alaska Statute 22.07.020 provides, in pertinent part, as follows:  (a) The court of appeals has appellate jurisdiction in actions and proceedings commenced in the superior court involving:

(1) criminal prosecution

(2) post-conviction relief

Evidence  Rule  404  states  in  pertinent  part:

(a)  Character Evidence Generally.  Evidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith

x

on a particular occasion, except:

(1)    Character of the Accused.    Evidence of a relevant trait of his character offered by the accused, or by the prosecution to rebut the same.

(3)  Character of Witness.  Evidence of the character of a witness, as provided in Rules 607, 608, and 609.

(b)  Other Crimes, Wrongs, or Acts.

(1)   Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person or to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence or mistake or accident.

Alaska Criminal Rule 6 states:

(r) **Admissibility of Evidence**

(1) Evidence which would be legally admissible at trial shall be admissible before the grand jury. In appropriate cases, however, witnesses may be presented to summarize admissible evidence if the admissible evidence will be available at trial. Except as stated in subparagraph (2), hearsay evidence shall not be presented to the grand jury absent compelling justification for its introduction.  If hearsay evidence is presented to the grand jury, the reasons for its use shall be stated on the record.

(2) In a prosecution for an offense un AS 11.41.410 - 11.41.440 or 11.41.455, hearsay evidence of a statement related to the offense, not otherwise admissible, made by a child who is the victim of the offense may be admitted into evidence before the grand jury if
    (i) the circumstances of the statement indicate its reliability;
    (ii) the child is under 10 years of age when the hearsay evidence is sought to be admitted;
    (iii)   additional evidence is introduced to corroborate the statement; and
    (iv)  the child testifies at the grand jury proceeding or the child will be available to testify at trial.

xi

(3) In this section "statement" means an oral or written assertion or nonverbal conduct if the nonverbal conduct is intended as an assertion.

Alaska Criminal Rule 8(a) states:

(a) **Joinder of Offenses.** Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies, misdemeanors or both,

> (1) are of the same or similar character and it can be determined before trial that it likely that evidence of one charged offense would be admissible to prove another charged offense,
> (2) are based on the same act or transaction, or
>
> (3) are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Alaska Criminal Rule 14 states, in pertinent part:

> If it appears that a defendant or the state is unfairly prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires. A showing that evidence of one offense would not be admissible during a separate trial of a joined offense or a codefendant does not constitute prejudice that warrants relief for severance the court may order the attorney for the state to deliver to the court for inspection in camera any statements or confessions made by the defendants which the state intends to introduce at trial.

Alaska Criminal Rule 25 states, in pertinent part:

> (a) **Before Trial.** Where a judge of the superior court is disqualified or for any other reason is unable to sit in the trial or hearing of any pending matter, the presiding judge or the chief justice of the supreme court shall designate another judge of the judicial district in which the matter is pending, or a judge temporarily assigned thereto, to hear the matter.

xii

(d)  **Change of Judge as a Matter of Right.**  In all courts of the state, a judge may be peremptorily challenged as follows:

(1) **Entitlement.**  In any criminal case in superior or district court, the prosecution and the defense shall each be entitled as a matter of right to one change of judge.  When multiple defendants are unable to agree upon the judge to hear the case, the trial judge may, in the interest of justice, give them more than one change as a matter of right, the prosecutor shall be entitled to the same number of changes as all the defendants combined.

(2) **Procedure.**  A party may exercise the party's right to a change of judge by filing a "Notice of Change of Judge" signed by counsel, if any, stating the name of the judge to be changed.  The notice shall neither specify grounds nor be accompanied by an affidavit.  The notice of change of judge is timely if filed within five days after notice that the case has been assigned to a specific judge.

(3)  **Re-Assignment.**  When a request for change of judge is timely filed under this rule, the judge shall proceed no further in the action, except to make such temporary orders as may be absolutely necessary to prevent immediate and irreparable injury before the action can be transferred to another judge.  However, if the named judge is the presiding judge, he shall continue to perform the functions of the presiding judge.

(4)  **Timeliness.**  Failure to file a timely request precludes a change of judge under this rule as a matter of right.

(5)  **Waiver.**  A party loses the right under this rule to change a judge when the party, after reasonable opportunity to consult with counsel, agrees to the assignment of the case to a judge or

xiii

knowing that the judge has been
permanently assigned to the case,
participates before the judge in an
omnibus hearing, any subsequent pretrial
hearing, a hearing under Rule 11, or the
commencement of trial. No provision of
this rule shall bar a stipulation as to
the judge before whom a plea of guilty or
of nolo contendere shall be taken under
Rule 11.

Alaska Criminal Rule 53 states, in pertinent part:

These rules are designed to facilitate business and
advance justice. They may be relaxed or dispensed
with by the court in any case where it shall be
manifest to the court that a strict adherence to
them will work injustice.

Evidence Rule 401 states in pertinent part:

Relevant evidence means evidence having any
tendency to make existence of any fact that is of
consequence to the determination of the action more
probable or less probable than it would be without
the evidence.

Evidence Rule 403 states in pertinent part:

Although relevant, evidence may be excluded if its
probative value is outweighed by the danger of
unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue
delay, waste of time, or needless presentation of
cumulative evidence.

Evidence Rule 607 states in pertinent part:

**Who May Impeach or Support.**

(a) Subject to the limitation imposed by these
rules, the credibility of a witness may be attacked
by any party, including the party calling him.

(b) Evidence proffered by any party to support the
credibility of a witness may be admitted to meet an
attack on the witness' credibility.

Evidence Rule 608 states in pertinent part:

**Evidence of Character and Conduct of Witness.**

(a) **Opinion and Reputation Evidence of Character.**
The credibility of a witness may be attacked or
supported by evidence in the form of opinion or
reputation, but subject to these limitation: (1)
the evidence may refer only to character for
truthfulness or untruthfulness; and (2) evidence of
truthful character is admissible only after the
character of the witness for truthfulness has been
attacked by opinion or reputation or otherwise.

(b) **Specific Instances of Conduct.**  If a witness
testifies concerning the character for truthfulness
or untruthfulness of a previous witness, the
specific instances of conduct probative of the
truthfulness or untruthfulness of the previous
witness, may be inquired into on cross-examination.
Evidence of other specific instances of the conduct
of a witness offered for the purpose of attacking
or supporting that witness' credibility is
inadmissible by these rules, by other rules
promulgated by the Alaska Supreme Court or by
enactment of the Alaska Legislature.

(c) **Admissibility.**   Before a witness may be
impeached by inquiry into specific instances of
conduct pursuant to subdivision (b), the court
shall be advised of the specific instances of
conduct upon which inquiry is sought and shall rule
if the witness may be impeached by such inquiry by
weighing its probative value against its
prejudicial effect.

Evidence Rule 609 states in pertinent part:

**Impeachment by Evidence of Conviction of Crime.**
(a) **General Rule.** For the purpose of attacking the
credibility of a witness, evidence that he has been
convicted of a crime is only admissible if the
crime involved dishonesty or false statement.

(b) **Time Limit.** Evidence of a conviction under this
rule is inadmissible if a period of more than five
years has elapsed since the date of the conviction.
The court may, however, allow evidence of the
conviction of the witness other than the accused in
a criminal case after more than fives years have
elapsed if the court is satisfied that admission in
evidence is necessary for a fair determination of
the case.
(c) **Admissibility.**   Before a witness may be

xv

impeached by evidence or a prior conviction, the court shall be advised of the existence of the conviction and shall rule if the witness may be impeached by proof of the conviction by weighing its probative value against its prejudicial effect.

Evidence Rule 613 states in pertinent part:

**Prior Inconsistent Statements--Bias and Interest of Witnesses.**

(a) **General Rule.** Prior statements of a witness inconsistent with his testimony at a trial, hearing or deposition, and evidence of a bias or interest on the part of a witness are admissible for the purpose of impeaching the credibility of a witness.

(b) **Foundation Requirement.** Before extrinsic evidence of a prior contradictory statement or of bias or interest may be admitted, the examiner shall lay a foundation for impeachment by affording the witness the opportunity, while testifying, to explain or deny any prior statement, or to admit, deny, or explain any bias or interest, except as provided in subdivision (b)(1) of this rule.

(1) The court shall permit witnesses to be recalled for the purpose of laying a foundation for impeachment if satisfied that failure to lay a foundation earlier was not intentional, or if intentional was for good cause; even if no foundation is laid, an inconsistent statement may be admitted in the interests of justice.

(2) In examining a witness concerning a prior statement made by him, whether written or not, the statement need not be shown nor its contents disclosed to him at that time, but on request the same shall be shown or disclosed to opposing counsel.

28 U.S.C. 455 states in pertinent part:
(a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his partiality might be reasonably questioned.

xvi

COMES NOW, the Appellant, DAVID SIMMONS, (referred to as Simmons), by and through his co-counsel of record, Randall S. Cavanaugh, and respectfully submits the following to the attention of the court:

JURISDICTION

This court has jurisdiction pursuant to A.S. 22.07.020.

FACTS OF THE CASE AND COURSE OF PROCEEDINGS

Simmons was charged in an indictment that was filed on 11/1/90 with four counts. He was charged with committing the following crimes: Count I. Burglary in the first degree (A.S. 11.46.300(a)(1); Count II. Assault in the Second degree (A.S. 11.41.210 (a)(1); Count II. Assault in the third degree (A.S. 11.41.220(a)(1); and Count IV. Misconduct involving Weapons in the first degree (A.S. 11.61.200(a)(1). (R pp. 1-3) Simmons pled not guilty.

Simmons did not want Judge Curda on the case. He made various motions for Judge Curda to recuse himself. (T.R. p. 3-14) Judge Curda denied the motion and the reviewing judge confirmed the trial judge's ruling (T.R. p. 38-58). On June 26, 1991 the court noted that the Court of Appeals denied the petitions and noted that stays had been lifted on June 25, 1991. The court noted that it denied the filed pre-emptory challenge as being untimely. (T.R. pp. 137-147.) The court heard the reconsideration of the motion to reconsider the pre-emption of Judge Curda filed by Simmons and denied it even on reconsideration. (T.R. pp. 194-197) Simmons had again filed a motion to disqualify Judge Curda which was denied. (T.R. pp. 407-408)

1

Simmons filed motions to suppress, sever and dismiss in the case (T.R. p. 430). The court denied the motions and the case proceeded to trial before Judge Curda. (T.R. pp. 459-463) Simmons stipulated to the prior felony conviction. The stated requested a protective order regarding bringing up the prior bad acts of E.A. and granted it. (T.R. pp. 490-497)

Simmons requested for a protective order about the fact that he had been incarcerated and that a witness had been in jail with him and it was granted. (T.R. pp. 502-504)

The state gave its opening statement. Simmons reserved his opening statement until the close of the State's case. There were evidentiary questions that were dealt with prior to trial. Simmons listened to the tapes of Mr. Herrera and E.A. He stated that he had an objection. He stated that Sgt. Bilyue's testimony was hearsay. The state said it would call E.A. The court asked about the cross-examining E.A. as to the bootlegging charge. The state said there was not enough evidence even at the probable cause level to arrest or charge her with bootlegging even though she was a suspect. The court again ruled against Simmons bringing up the allegation citing Evidence Rule 403. Simmons objected and read from the transcript of the interview of E.A. The court again denied the use of the information. (T.R. pp. 516-534)

E.A. testified that she knew Simmons and that they had a romantic relationship and they lived in the same house. E.A. testified that she wanted him out of the house and that incident date was September 6 or 7 of 1990. She testified that she had him escorted out of the house. E.A. further testified that Simmons came

2

to the house and hit her with various items and tried to choke her. E.A then went to her sister's and called the police. (T.R. pp. 536-548)

E.A. then testified that Simmons had pointed a gun to her head in August. Simmons objected and the court overruled the objection. E.A. testified that Simmons called Herrera to bring the gun over and that he came over. Simmons took the bag from him and took E.A. into the bedroom. E.A. said that it was dark and that Simmons said what the object was: a .44. She testified that it appeared to be a gun, he said he was going to kill me, and that she was afraid. E.A. testified that he gave bag to Herrera, who left. (T.R. pp. 549-553)

E.A. stated that she tried to leave the house but could not and that she was kept for several days. Simmons objected on the basis that it was another bad act. The court overruled the objection. The state then asked if Simmons had threatened to kill her after the incident with the gun. Simmons objected and the court over ruled the objection. E.A. stated that he had threatened her over the phone. (T.R. pp. 543-556)

E.A. reviewed and identified a number of exhibits, numbers one through 4. State's exhibit #3 was identified as the gun that was pointed at her head; but this exhibit was withdrawn after she was unable to identify it. The state questioned her as to the time when the last spoke to Simmons before the assault. E.A. testified that she had said that he could come over, to come over at 6:30 and he may take it as an invitation, but he came over at 11:30. E.A. testified that she was asleep when he came over, that he didn't

3

have permission to come over at any other time, and that the door was locked. E.A. testified that she was unable to see the bullets, but had heard him cock it. She further testified that he opened up the cylinder and closed it; but, she assumed it was loaded. E.A testified that she had been drinking that night. On cross examination, E.A. testified that the police insisted that she go to the hospital. She further stated that she had a conversation with the officers and that it was stated to her that if she didn't testified favorably at the grand jury that she could spend at least five years in jail. E.A. said she was afraid. (T.R. pp. 558-571)

Simmons questioned her as to the extent of the injuries. E.A. testified that she didn't require stitches and was at the hospital for an hour and a half. It was at this point that the police came to hospital and took her to the police station. E.A. testified that Officer Bilyue stated for her not to change anything. (T.R. pp. 576-577)

Simmons then attempted to question E.A. as to the incident on Nov. 20, 1990 and the materials contained in an affidavit. The district attorney objected and the court sustained it. E.A. testified that she told the grand jury that she received the injuries due to a fall. She testified as to her motivation about testifying against Simmons. (T.R. pp. 578-585)

E.A. then confirmed that she was coached in her statements and was provided a tape by a secretary at the district attorney's office. E.A. testified that she was testifying differently than in the grand jury because she had to. She stated that was told to by Sgt. Bilyeu and the D.A.'s office. E.A. testified that she was

4

threatened to be put in jail if she spoke up for David (Simmons). E.A. then testified that she had charges brought up against her and the court sustained the state's objection. Simmons then questioned E.A. as to the September incident. She stated that Simmons admitted to speaking to Herrera. He asked if E.A. was under the influence of drugs at the time; the state objected and the court sustained it. (T.R. pp. 585-588)

E.A. under-cross examination testified that her back was to Simmons and she did not see him hit her. He asked if he could have fallen. She replied no; but then admitted that she didn't know if he stumbled and fell. E.A. confirmed that she was angry, upset and assumed that he struck her. It also confirmed that she was under a great deal of stress at the time due to her brother's death. She confirmed that she testified to the same before the grand jury. E.A. then testified that the police report was correct story. She was then asked if she lied before the grand jury; she replied yes and no. E.A. then said that she was saying things because the defendant told her to. She admitted she had been put under a lot of pressure through Simmons, the police and this went on for quite awhile. She said she was there to tell the truth. (T.R. pp. 593-603)

Simmons made prior application to bring up that the State had made a deal with E.A. to testify consistent with the police statements. The court denied the application and took judicial notice that any cases against her have been dismissed so that anything about that was irrelevant. (T.R. pp. 604-605)

E.A. confirmed that she changed her testimony at grand jury because she was threatened by Simmons, that he'd get even with her. She testified that she was threatened by an unknown person at the court house because she did real bad and that thhe unknown person was going to hit her, but Herrera stopped him. (T.R. pp. 610-615)

Simmons tried to question her about a fight between them (and a window was broken) where E.A.'s sister was present and the fact that she was on other substances. The state objected and the court sustained the objection (TR. p. 620-624)

Sgt. Bilyue testified that he was an officer for the City of Bethel and that he was on duty on the 26th of September, 1990. Bilyue testified that he responded to a call from E.A. He testified that he went to the door and E.A. answered it.  He said she was excited and bleeding from the head. The officer indicated that he was told that Simmons was still in the residence and that he sent her to the hospital in a cab.  The officer stated that he observed bruises on her face and blood coming down her forehead and on her clothing and in her hair. He stated he wanted her to get treatment and so that treatment would be documented. (T.R. pp. 669-674)

Bilyue testified that he and another officer went to E.A.'s residence.  At this point they went in and observed the defendant lying on the couch.  Bilyue stated his observations as to how the defendant was dressed and that he observed blood on the front of the pants. At this point they placed him under arrest for assault and burglary.  He was observed to be intoxicated and was transported to jail. Sgt. Bilyue noted that house was in disarray. He did not note any injuries upon Simmons. The officer then seized

6

various items from the residence.    Sgt. Bilyue testified that it was at the hospital that E.A. reported that an assault involving a weapon occurred before the one that morning.    E.A. then directed the officers to where the revolver was kept.  She indicated that it was at the home of Herrera and gave a taped interview.  Sgt. Bilyeu stated he prepared the search warrant paperwork and received approval to perform the search. He went to Herrera's house; Mr. Herrera indicated that the gun was in a box and they found ammunition. (T.R. pp. 675-686)

The officer indicated they took photographs of the crime scene and of E.A.   He indicated they seized various items of evidence. (T.R. pp. 687-694)  Sgt. Bilyue then testified that it appeared there was blood at the scene and on Simmons' clothes. (T.R. pp. 705-706).

The state then attempted to bring into evidence a tape that was found at Mr. Herrera's house.   The district attorney stated that it was the basis for the 4BE-S91-131 witnesses tampering charge and that it to show that Simmons had attempted change E.A.'s testimony.   Simmons objected stating that the tape was hearsay and that E.A. was available and provided an affidavit to the contrary. The court overruled the objections and the tape was played. (T.R. pp. 722-725)  There was extensive cross-examination by Simmons of Sgt. Bilyue.    During the course of the cross-examination Sgt. Bilyue admitted there was no checking of fingerprints on the items and that he could not say that Simmons ever held the items (T.R. pp. 754-755)

It was indicated that the state was going to call Mr. Herrera to the stand and that Simmons had also subpoenaed him. To check on the situation concerning counsel for Mr. Herrera, he was brought before the court. Mr. Herrera indicated that he wanted an attorney so he could not incriminate himself (T.R. pp. 790-795)

Officer Hodges testified that he was an officer in Bethel, Alaska at one point. He testified that he observed Simmons was intoxicated at the time of arrest. Officer Hodges testified that he observed E.A. upset and that she a considerable amount of blood on the back of her head. Officer Hodges related that he observed Simmons asleep in the house on the couch. It was related that they arrested Simmons and that it appeared that there was blood on the floor. Officer Hodges then affirmed that he was at Mr. Herrera's residence when the search warrant was served. Mr. Herrera showed him where the gun was located. On cross-examination the officer stated that there was contact with Simmons earlier that evening and that had been no problems in having Simmons leave. It was stated that E.A. could stand on her own and appeared to be coherent. (T.R. pp. 802-823)

Dr. Gina Buono was called to testify as to the injuries and treatment of E.A. (T.R. pp. 834-842).

Next there was a hearing involving Mr. Herrera. Ultimately the court decided that Mr. Herrera was not going to testify for the state or Simmons. The state requested that Mr. Herrera's statement be played as he was unavailable under the rules. Simmons then moved for the court to have Mr. Herrera testify under <u>Echols v.</u>

8

State.  The court denied the motion for immunity. (T.R. pp. 847-910).

The court then allowed the state to play Mr. Herrera's testimony over Simmon's objections. The court reasoned that Mr. Herrera was unavailable, but that evidence Rule 804(b)(3) allowed the testimony in. (T.R. p. 928) The statement was brought in through Sgt. Bilyue. (T.R. pp. 932-933) The state rested. (T.R. p. 942)

Simmons gave an opening statement. (Tr. pp. 942-951) Simmons contended that E.A.'s statements were compelled by police and state action and that there was a non-disclosed agreement.  Mr. Provost was called and testified that E.A. was confronted by Sgt. Bilyue and was given a stern look. E.A. was observed to be crying and afraid. (T.R. p. 955).  Simmons called Kenny Jiles (T.R. p. 964) Simmons then called E.A. (T.R. p. 970)

Simmons moved to have the grand jury tape of Mr. Herrera played to the jury.  The state opposed it.  The court allowed Simmons to play the tape through the clerk of the grand jury. (T.R. pp. 1017-1033)

Simmons testified on behalf of his own defense that Mr. Herrera never brought a gun over on September 4, 1990.  Simmons testified that he was invited over to E.A.'s residence on September 26, 1990.  He denied assaulting E.A. with any of the items. Simmons stated that she had been under the influence of cocaine and she had assaulted him on September 26, 1990.  He testified that he was intoxicated when he went over. He stated that he spoken to her earlier and had permission to go over.  It was further testified

9

that it was dark in the house and that she smacked him, and he pushed her and she pushed him and he drug her down: he stated that he had lost his balance, tried to reach for something to stabilize himself. E.A. elbowed him and the babyswing fell down. It was at that time E.A. complained about her head. (T.R. pp. 1042-1053)

Simmons further testified that he did not own a handgun and that he had sold it to Mr. Herrera in May. He testified that he never tried to have Mr. Herrera try to get E.A. to change her testimony. Simmons then was cross-examined by the district attorney. The state then moved to be allowed to present a rebuttal case. The claim was that there was no attempt on their part to influence E.A. and Simmons had attempted to influence her. Simmons objected on the grounds of timeliness and the fact that the trial was becoming disjointed. (T.R. p. 1055-1079)

Mr. Bianchi testified that Simmons had contacted him concerning bail and Simmons wanted to get straightened out things with his girlfriend and work things out with his girlfriend. (T.R. pp. 1079-1080) Sgt. Bilyue was then called to testify as to the situation in the library. He stated that he hadn't upset E.A. Further that he had recorded the conversation. Sgt. Bilyue played the tape which was entered as plaintiff's #23. Simmons cross examined Sgt. Bilyue. Officer Hodges was called as part of the state's rebuttal case. Officer Hodges was used play the tape, which was entered plaintiff number 21. (T.R. pp. 1083-1104)

There was the closing statement by the state. Simmons gave his closing remarks. The court instructed the jury. (T.R. pp. 1105-1189) The jury returned a guilty verdict on all counts against

Ex. D, p. 29

Simmons. A pre-sentence report was ordered and the matter was set for sentencing. (T.R. pp. 1193-1195)

At sentencing there were several corrections made to the pre-sentence report. Counsel objected on various grounds as to the pre-sentence report and the materials contained within it and the sentencing was continued. (T.R. p. 1201-1213)

At sentencing Simmons was presumptive for six years for the B felonies based on the two prior felony convictions. The court stated that Simmons was presumptive for three years on Counts III and IV (the C felony counts). It was noted that Simmons had been sentenced in 4BE-S90-552 Cr. (T.R. pp. 1216-1218)

Simmons argued that presumptive term no longer applied since the 35.1 had been filed in 4BE-S84-328 Cr. and requested a continuance (it was denied). It was noted that there was a disagreement as to the amount of prior felonies of Simmons and the use of the psychological materials referenced in the presentence report. (T.R. pp. 1219-1229).

The state argued the aggravators in the case. Simmons objected to the various aggravators. Simmons argued the mitigators he deemed was applicable to the case. The court ruled on the aggravators and on the mitigators. (T.R. pp. 1230-1248)

The state then made his sentencing remarks. Simmons then made his sentencing arguments. The court then recessed and reconvened for the sentencing. Simmons was given 30 years, the maximum on each count to run consecutive. It noted that Simmons was sentenced to forty years when taking in the case of 4BE-S90-552. (T.R. pp. 1248-1265) Simmons appealed his case.

11

III. STATEMENT OF ISSUES

David Simmons, Appellant herein, contends that the trial court committed several errors prior to trial and at sentencing.

1. Did the trial court err when it failed to recuse itself?

2. Did the trial court err when it failed to honor the defendant's pre-emption of the trial court?

3. Did the trial court err when it failed to sever counts I and II from counts III and IV?

4. Did the trial court err when it denied the motion to dismiss the case?

5. Did the trial court err when it denied the defendant's motion to suppress the evidence seized from Mr. Herrera's residence?

6. Did the trial court erred when it failed to allow Mr. Herrera to testify or dismiss the case?

7. Did the trial court err in allowing the statement of Mr. Herrera to be admitted in depriving Simmons the right the right to confront him for the purpose of cross-examination?

8. Did the trial court err in limiting Simmons' cross-examination of E.A.?

9. Did the trial court abuse its discretion in excluding evidence that was probative of a material proposition to the defense case?

10. Was there insufficient evidence to support a conviction of assault in the second degree?

11. Did the trial court err when it denied the statutory and non-statutory mitigators at sentencing? Should the unverified material been struck?

12. Was the sentence imposed excessive?

IV. STANDARD OF REVIEW

The standard of review is that the trial court's rejection of the mitigator will be affirmed unless clearly erroneous. Degler v. State, 741 P.2d 659 (Alaska App. 1987).

12

Since the errors affected constitutional rights, and objections were raised below, the state must show beyond a reasonable doubt that the error did not contribute to the conviction. <u>Chapman v. California</u>, 386 U.S. 1824 (1967).

Where an alleged error is not of constitutional magnitude, the standard of review is "harmless beyond a reasonable doubt." <u>Dorman v. State</u>, 622 P.2d 488, 459 (Alaska 1981).

As to questions of law, this court is entitled to make an independent evaluation, substituting its own judgment for that of the trial court. <u>Juneby v. State</u>, 641 P.2d 823, 834 (Alaska App. 1982).

A sentencing judge's decision is conducted under the "clearly mistaken standard established in <u>McClain v. State</u>, 519 P.2d 811, 813-14 (Alaska 1974).

In challenges to the sufficiency of the evidence before a grand jury, every legitimate inference that may be draw from the evidence must be drawn in favor of the indictment. <u>State v. Ison</u>, 744 P.2d 416, 418 (Alaska App. 1987).

## V. <u>ARGUMENT</u>

David Simmons, Appellant herein, contends that the trial court committed several errors prior to and during trial and at sentencing.

### 1. <u>Did the trial court err when it failed to recuse himself?</u>

The defendant's right to an impartial tribunal is embodied in A.S. 22.20.020. as stated in the case of <u>Perotti v. State</u>, 604 P.2d 575, at 577 (Alaska 1979) The trial court's decision not recuse itself will only be overturned if it is an abuse of discretion. <u>Feichtinger v.</u>

13

<u>State</u>, 779 p.2d 344 (Alaska App. 1989) and <u>Amidon v. State</u>, 604 P.2d 575 (Alaska 1979).

Simmons filed a motion for Judge Curda to recuse himself from the case. (R. p. 6)  The memorandum filed in support of the motion set forth the reasons behind for the request for recusal and the supporting authority. (R. p. 7-11).

The judge stated that the court was only going to deal with the issue of the motion for disqualification in 4BE-S90-90. Simmons tried to set the procedural record straight, but was informed that the court was going to deal with the motion. (T.R. p. 56.)

The defense and the district attorney stated that they did not have any thing to add to the motions. The court stated it was ready to rule having researched the law. The reviewing court ruled that Judge Curda's refusal to recuse himself was correct.  The court cited A.S. 22.20.020. The court noted that statute requires a judicial officer to disqualify themselves in any matter in which the judge feels a fair and impartial decision cannot be given.  The court stated that Judge Curda had considered those matters when he denied the request for recusal. It was further the requirements of Judicial Canon III requires that a judge should disqualify themselves where impartiality might be reasonably questioned, personal bias, or has prejudice, or knowledge of disputed evidentiary.  The court stated that had been no evidence set forth to show any of this. (T.R. pp. 56-58.)

Simmons stated that he had appealed the decision to the Court of Appeals. The public defender stated there was a motion to withdraw filed The court stated it was continuing the hearing until the paperwork caught up to the files and that Rule 45 was tolled. (T.R. pp. 60-66.)

14

On June 26, 1991 the trial noted that the Court of Appeals denied the petitions and noted that stays had been lifted. The court noted that the stays had been lifted on June 25, 1991. The court noted that it denied Simmons' pre-emptory challenge as being untimely. (T.R. pp. 137-147)

The memorandum (R. p. 7-11) stated that Simmons was convicted of a felony in the case of State of Alaska v. David Simmons, 4BE-S84-328. At the time of case Judge Curda was the district attorney on the case and worked on the appeal. Judge Curda was a district attorney in Bethel from 1987 through 1989. His Office was served relevant documents on the appeal. Simmons appealed the case to the Court of Appeal. Simmons won a reversal in the case and his conviction was reversed. On June 14, 1990, Simmons pled no contest to a lessor charge of assault in the third degree. This conviction, that was entered on June 14, 1990, formed the basis for the felon in possession charge against Simmons.

The memorandum further stated that on October 11, 1990 Simmons was arraigned in the superior court on two counts involving Misconduct involving weapons in the First Degree. Simmons moved to exercise his pre-emptory challenge and requested that Judge Curda be recused. On 11-1-90 Simmons was arraigned on 4BE-S90-902 which forms the basis of this appeal.

Simmons cited in the memorandum filed in the court A.S. 22.020.020. The district attorney's office opposed the motion to recuse and the court did not recuse itself from the case. Judge Savell reviewed the matter and upheld the trial court's action. An interlocutory appeal was filed and the court of appeals declined the matter. Simmons contends Judge Curda should have recused himself from this matter.

15

The case of <u>Perotti</u> dealt with a case where a judge sat on a case where a trial court sat on both the waiver proceeding of a juvenile and then the change of plea and sentencing after waiver had been completed. Perotti filed a motion to recuse the judge citing that he believed that there was the appearance of partiality. The Court of Appeals reversed the case and remanded the sentencing to be done by another judge. <u>Perotti</u>, at 330.

Simmons believes that the reasoning in remanding the decision in <u>Perotti</u> is applicable. In <u>Perotti</u> the Court of Appeals reviewed the close relationship between actual and apparent impartiality in conjunction with A.S. 22.020.020(a)(9). The court duly noted that "...need to consider impartiality seems implicit in the language of A.S. 22.020.020(a)(9), for whenever it is predictable that an unmistakable appearance will arise from a judge's participation in a case, there will be "reason" for concluding that a "fair and impartial decision cannot be given". The court then reviewed the "objective facts" as required by <u>Amidon</u>, 604 P.2d at 577.

Simmons contends that a review of the "objective facts" would lead to the conclusion that there was an appearance of partiality. The facts are fairly straight forward. First, Judge Curda was a district attorney in Bethel during the pendency the case of 4BE-S84-328. Simmons received eight (8) years on the case. Simmons contested the conviction and was able to reverse the conviction.

Second, the offense in 4BE-S90-902 occurred just a few months after the conclusion of the 4BE-S84-328 matter. In essence the case that Judge Curda was involved as a district attorney when the case was still in the process of being dealt in the court system well within the two

16

year period of his being put onto the bench. The public defender in its motion cited the fact that Judge Curda had been in the district attorney's office in Bethel, Alaska during the pendency of the appeal and did not leave that office until 1989. It was during this time that Simmons was appealing 4BE-S84-328 CR (Appeal number A-2871). Simmons won a reversal on the case (M.O. & J. opinion number: 1912, dated November 8, 1989) It was remanded back to the Bethel trial court and Simmons pled to a lesser offense in June of 1990. Simmons believes that this disqualified Judge Curda from sitting on the case pursuant to A.S. 22.20.020 (6): the judicial officer has presented as attorney for the person against a party....in a matter within two years preceding the assignment of the judicial officer to the matter.

Third, the court unduly limited the cross-examination of E.A. and denied access to Mr. Herrera as a witness and to cross-examine his statements as set forth in a later stated appeal segment.

Fourth, Simmons tried to prevent Dr. Buono from testifying that David Simmons was the source of the injury by objecting to it. The court denied the objection even the question of identity was not in issue. (Tr. pp. 734-43). Simmons contends that the allowance was improper. Sluke v. State, 718 P.2d 394 at 399 (Alaska App. 1986). Simmons cites this as further evidence that the court was biased as to his case even as to this witness and should not have been sitting on the trial.

Finally, Judge Curda showed partiality in his findings at sentencing (See section 12 concerning excessive sentence). Both the defense and the prosecution presented the appropriate mitigators and aggravators. The court declined to find the mitigators offered and

17

found nearly all the aggravators. The court then found Simmons was a worst offender and a dangerous offender based on his prior record and his <u>conduct in Bethel</u>. (T.R. p. 1261)(emphasis added). The court determined there should be a flat time sentence and there be no probation. (T.R. pp. 1261-1262) The court stated that the sentence would be consecutive. (T.R. pp. 1263-1264). The court imposed maximum terms on all the counts: a term of thirty (30) years. It noted that Simmons was sentenced to forty (40) years when taking in the case of 4BE-S90-552 in the aggregate. (T.R. p. 1265) In this case Simmons received the maximum sentence as to all counts as allowed by the legislature and it was run consecutive in all circumstances with no probation what so ever. It was the most severe sentence that could have meted out.

The court of appeals in both <u>Perotti</u> and <u>Amidon</u> in deciding those case took into account the sentences imposed by the trial court. In <u>Perotti</u>, the trial court gave the juvenile the maximum sentence in light of the juvenile's potential for rehabilitation. <u>Perotti</u>, at 329. The court of appeals remanded the case to another sentencing judge given the totality of the circumstances. In <u>Amidon</u> the court of appeals refused to over turn the sentences given by Judge Carlson. The court noted that sentences of one year with six suspended was well within limit mandated in the earlier case. <u>Amidon</u>, p. 578.

One case that should be considered for public policy considerations is the case of <u>Bowlin v. State</u>, 643 P.2d 1 (Alaska App. 1982) In that case the sentencing court was a reversed and there was a need for re-sentencing. The basis for the remand was that the sentencing court was exposed to a letter that was not disclosed to the sentencing parties. The court noted in its opinion that "(i)n the area of criminal

18

sentencing, the need to avoid any appearance of particularly great."
Bowlin, at 4 [quoting Thurkill v. State, 551 P.2d 543 (Alaska 1976)].
In the case at bar the defense and the defendant cannot know and does
not know that materials that judge took into account from the days when
he prosecuted Simmons was acting district attorney in Bethel.

Appellant also believes that it is appropriate for the court for
seek guidance on this matter from the federal courts.  Recently the
Supreme Court for the United States of America decided the case of
Liljeberg v. Health Services Acquisition Corp., 486 U.S. 847, 108 S.Ct.
2194, 100 1.Ed. 2d 855 (1988) on the issue of appearance of impartiality
versus appearance of partiality.   The statute involved was similar to
the one before the court in this case: 28 USC section 455, which
provides in relevant part, that "(a) Any justice, judge, or magistrate
of the United States shall disqualify himself in any proceeding in which
his impartiality might be reasonably question."  This section is very
similar to the judicial canon cited by the defendant in his memorandum.

The Supreme Court ruled that scienter is not a requirement to
violate the statute.  Liljeberg, supra, at 2202.  The court determined
that under the section that recusal is required that an objective
observer would have questioned the judge's impartiality.  Liljeberg,
supra, at 2203.   The court then stated that the analysis of the
situation did not end there: next, it to be determined if the error was
harmless (in the case of forgetful judges...which Simmons argues does
not apply in the case at bar).  In the Liljeberg case it was determined
that the judgment had to be vacated in the situation where the judgment
was not just and is needed "whenever such action is appropriate to
accomplish justice".  Liljeberg, supra, at 2204.  The court vacated the

19

judgment in that case after it considered the "risk of injustice to the parties in the particular case, the risk that denial of relief will produce injustice in other cases, and the risk of undermining the public's confidence in the judicial process." <u>Liljeberg</u>, <u>supra</u>, at 2205. Justice Stevens in his opinion cautioned in his opinion that "(w)e must continuously bear in mind that to perform its high function in the best way 'justice must satisfy the appearance of justice." <u>Liljeberg</u>, <u>supra</u>, at 2205.

Simmons contends, in conclusion, that Judge Curda should not have sat on the case given the fact that he was a prosecutor in Bethel during the pendency of the case 4BE-S84-328 CR. It is the appellant's position that fair-minded persons, given this information, would find the appearance of partiality given the case known facts and outcome of the case. The case should be remanded back for re-trial before another trial judge.

2. <u>Did the trial court err when it failed to honor the defendant's pre-emption of the trial court?</u>

On November 2, 1990, the defendant was arraigned before Judge Curda. At such time he moved to have the court recuse itself from the case. He stated that judge had been pre-empted in the earlier case (4BE-S90-552 CR). The court denied the motion. The defendant then pre-empted the judge from the case. The court stated that it was going to continue the arraignment. The court entered a not guilty plea and stated that Judge Savell could continue the advisement. Simmons was designated as co-counsel. No motion or consent to withdraw the original pre-emption was filed by Simmons or by his counsel, the public defenders agency.

20

The court noted that Judge Curda denied the cause motion and assigned the case to himself. Simmons asked that Judge Curda be disqualified to sit as judge on his case pursuant to A.S. 22.20.020. (T.R. pp. 3-6) Judge Curda signed the order denying recusal on December 5, 1990. (R. p. 22)

On June 26, 1991 the trial noted that the Court of Appeals denied the petitions for review and noted that stays had been lifted. The court noted that the stays had been lifted on June 25, 1991. The court noted that it denied the pre-emptory challenge as being untimely. The court dealt with the conflict of interest issue. (TR pp. 137-149.)

Simmons argued that Judge Curda was pre-empted. The court then stated that the motion for reconsideration on this matter needed to be in writing. Simmons stated that he ordered Mr. Provost to file the pre-emption when he received notice of the Court of Appeals denial of his motions. (TR. pp. 159-168)

The court heard the reconsideration of the motion to reconsider the pre-emption of Judge Curda filed by Simmons. Simmons stated that Judge Curda was pre-empted at the arraignment. Simmons stated that there was no authority to withdraw a pre-emption once exercised. He cited the cases in his motion. Simmons further stated that Judge Curda, since he had acted after the pre-emption pursuant to Criminal Rule 25 (d) was filed, had acted outside his authority. Thus the cases had to be dismissed due to Rule 45. (T.R. pp. 194-196) The trial court ruled against Simmons' motion for reconsideration on to recuse Judge Curda. The court stated that Simmons was in front of it in November, at which time he moved to have him recused. At such time the public defender was appointed. Judge Savell heard Simmons' motion on November 6. Judge

21