Savell stated that Judge Curda was still the judge on 902. These cases were stayed pending appeal and that Mr. Provost filed a motion for pre-emption.

The court stated that Simmons's argument was that the motions tolled motion to recuse. The court noted that in <u>Wamser v. State</u>, 587 P.2d 232 (Alaska 1978), challenge for cause does not toll the time for pre-emption. Judge Curda ruled that motion for pre-emption was untimely. On that basis, then the motion to dismiss for Rule 45 was denied. (T.R. pp 196-197)

Alaska Criminal Rule 25 was drafted to deal with the disqualification of a judge. The rule states that a defendant has as a matter of right to change a judge. A.Cr.R. 25(d)(1). In this case this was acted upon on November 2, 1990. Simmons stated it was clear that he did not want Judge Curda on the case. It is clear that there is no issue of timeliness. Judge Curda re-assigned the arraignment to be dealt with by Judge Savell.

There is an issue of whether or not counsel can waive this pre-emption pursuant to Alaska Criminal Rule 25(d)(5). In the case the public defender tried to withdraw the pre-emption in an attempt to be able to file the motion for removal for cause. The court granted it and the motion was filed with supporting memorandum and affidavit. (R. pp. 6-16). The matter was litigated and the motion was denied. Simmons filed an appeal to the Court of Appeals which was denied.

Mr. Provost, advisory counsel for Simmons at the time, filed a notice of change of judge that dated June 7, 1991. Mr. Provost explained in his affidavit that Simmons had called him on June 5, 1991 and wanted Judge Curda off the case. The affidavit further stated, in essence,

that Simmons learned from the Court of Appeal order no. A-3835 as to who would be hearing the case and thus notice was timely. Judge Curda issued an order denying the preemption as being untimely on June 25, 1991 (R. pp. 28-32). This order did not disclose the reasoning of Judge Curda as to why the motion was not timely given the situation involving the appeal or why Rule 53 would not apply.

Simmons then filed a motion for reconsideration on the denial stating the status of the case and supported it with an affidavit. (R. pp. 33-41) Simmons contends the trial court was in error. The preemption should have been accepted under Criminal Rule 53.

The supreme court for the State of Alaska issued an opinion discussing the rights governing the issue of preemption in the case of Riley v. State, 608 P.2d 27 (Alaska 1980). The court stated "(t)he right to challenge a judge peremptorily has been granted by the legislature (and) (i)t is designed to further the substantive right of a litigant to a fair trial before an unbiased judge". Id. at pp. 28-29. The issue of timeliness is basically to prevent "...delay, calendaring disruption, and waste of judicial time which would result if notice was filed on the date of trial." Id. at p. 29.

The court should have taken notice of Criminal Rule 53 which provides for the relaxation of the rules and waived the timeliness issue if it believed that Mr. Simmon's notice of change was untimely. It is clear that this action was not to cause Rule 45 problems since the court's Rule 45 calculation was cited in excess of sixty (60) days on counts I & II and over ninety (90) days on counts III & IV. Thus this court should find that Judge Curda abused his discretion in the denial of the pre-emption and remand the case to be re-tried by another judge.

23

Ex. D, p. 42

3. <u>Did the trial court err when it failed to sever counts I and II from counts III and IV?</u>

The trial court's decision to deny severance can be overturned only for an abuse of discretion, <u>Maynard v. State</u>, 652 P.2d 489, 491 (Alaska App. 1982) and where there has been a showing of prejudice. <u>Montes v. State</u>, 669 P.2d 961, (Alaska App. 1983) <u>Abdulbaqui v. State</u>, 728 p.2d 1211, 1218-19 (Alaska App. 1986)

Simmons moved to have these counts I & II and counts III & IV severed from each other. (R. p. 119). Rule 8(a) now allows joinder of similar offenses if the government can demonstrate before trial that evidence of each offense will likely be cross-admissible. The intent was to "permit multiple offenses to be joined at trial when evidence of one is admissible to prove the other" 1988 House Journal at 2332. <u>Sharp v. Alaska</u>, Opinion 1233 at 13, (issued July 17, 1992)

In determining whether or not the trial court erred in not granting the requested severance, we must look at several areas of law. First, the court must view whether or not the original joinder was proper under Criminal Rule 8. Second, the court must then determine if the joinder is prejudicial under Criminal Rule 14.

Criminal Rule 8(a) allows the joinder of offenses (1) are of the same or similar character and it can be determined before trial that it is likely that evidence of one charges offense would be admissible to prove another charges offense, (2) are based on the same act or transaction; (3) are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. Criminal Rule 14 allows relief from prejudicial joinder.

24

In <u>Nell v. State</u>, 642 P.2d 1361 (Alaska App. 1982), it was stated that first, under Rule 8(a), it must be asked whether the two offenses charged are so related as to make joinder proper. Second, under Rule 14, it must be determined whether, given a propriety of joinder under Rule 8(a), joinder of the offenses for trial will unduly prejudice the defendant. In otherwords, in determining whether to sever multiple charges charged in a single indictment, the court must first determine whether any one of the subsections under Criminal Rule 8(a) has been satisfied. If any of the subsections under Criminal Rule 8(a) apply, the court must then turn to Criminal Rule 14 to determine whether joinder of the offenses would be unduly prejudicial to the defendant.

In <u>Johnson v. State</u>, 730 P.2d 1750 (Alaska App. 1986), the Alaska Court of Appeals held that severance should be granted automatically under Criminal Rule 8(a)(1) when the offenses are joined simply because they are of the same or similar character. In determining whether joinder pursuant to Criminal Rule 8(a)(1) is proper, the court must determine whether evidence of one charged offense will be admissible to prove another charged offense. As such, the court must turn to Evidence Rule 404(B).

Evidence Rule 404 was originally viewed to be a rule of exclusion as opposed to a rule of admissibility. <u>Oksoktaruk v. State</u>, 611 P.2d 521 (Alaska 1980). As such, Evidence Rule 404(B) represents the "presumption in our law that the prejudicial effect of introducing a prior crime outweighs what probative value may exist with regard to propensity. No case by case balancing in permitted." <u>Id</u>. at 524. However, 404(B) evidence may be material for reasons other than propensity. When that is the case, the

25

court must first determine that the evidence sought to be admitted has relevance apart from propensity, and, second, the court must determine that the non-propensity evidence outweighs the presumed highly prejudicial impact of the evidence. <u>Lerchenstein v. State</u>, 697 P.2d 312 (Alaska App. 1985). If sufficient other evidence has been introduced, the evidence of other crimes must be excluded so that tenuous or marginal probative value of prior crimes' evidence will never be allowed to serve as an excuse for implanting prejudice in the minds of the jury. <u>Moore v. State</u>, 709 P.2d 498 (Alaska App. 1985). Whenever the prosecution wishes to use character evidence, the trial court should seriously consider delaying the offer until the prosecution's rebuttal. <u>Id</u>. at 506.

In determining the admissibility of other acts evidence, Alaska law required that the trial court apply a two-step analysis. First, the court must determine if the evidence sought to be admitted has relevance apart from propensity. Second, the court must determine if the non-propensity relevance outweighs the <u>presumed</u> highly prejudicial impact of the evidence under A.R.E. 403. Of course, if there is no genuine non-propensity relevance, the balancing step is never reached. <u>Lerchenstein v. State</u>, 697 P.2d 312, 315-16 (Alaska App. 1985), aff'd. 726 P.2d 546 (Alaska 1986).

Simmons contends that the charges stated in Counts I & II and Counts III & IV should have separated into two distinct trials. Simmons agrees that the charges involve the same "victim" E.A. However, the incidents arose on separate days and are qualitatively different (thus not arising from the same act or transaction). One assault was

with allegedly committed with ordinary household items, the other was allegedly committed with a firearm. Further, that the joinder of the two separate incidents could only leave the jury to believe that Simmons was accused of a multitude of things against E.A., thus he must be guilty by mere propensity.

There was no question of identity, nor was there any contention that these acts were a common plan or scheme of Simmons to maker sure there was some mistake or that the acts were inadvertent. In the case the only common thread was the same individual was the complaining witness who complained about two separate acts on the same day.

Even though Criminal Rules 8(a) and 13 allow joinder of two or more charges, a defendant can nevertheless obtain severance under Criminal Rule 14 by showing that the jury's ability to fairly decide the individual charges will be substantially impaired of the jury hears evidence relating to the other charges at the same time. <u>Sharp v. Alaska</u>, Opinion 1233 at 15, (issued July 17, 1992). Simmons believes this to be true in his case. The supreme court in the case of <u>Stevens v. State</u>, 582 P.2d 621 (Alaska 1978) noted that the trial court "must weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in justice administration". <u>Id</u>. at 627. The court thought it was appropriate to note that they were in agreement with the criticism which has been levelled against a procedural rule which permits the joinder of offenses of the same of similar character. <u>Id</u>. at 629.

Simmons believes that the court of appeals must conclude that Judge Curda erred and should have granted the severance. In this case at bar, the only thing that could be gained from the joining of the offenses

would be to prejudice the jury in to thinking from the sheer amount of offenses and the course of conduct involving E.A. that Simmons had a propensity for violence against E.A. and therefor was guilty the acts charged.  Simmons was seriously prejudiced in several ways.  First, the overall course of the trial the state would present evidence against Simmons that he knew E.A., he assaulted her with a firearm on an earlier occasion, Second, that then he then several days later broke into her house (after gaining permission to come over) and assaulted her with various household items.  The judgment should be reversed and matter remanded back for separate trials.

   4. <u>Did the trial court err when it denied the defendant's motion to
      dismiss the case?</u>

   Simmons filed a motion to dismissed indictment as to Counts III & IV and it was denied.  In challenges to the sufficiency of the evidence before a grand jury, every legitimate inference that may be draw from the evidence must be drawn in favor of the indictment. <u>State v. Ison</u>, 744 P.2d 416, 418 (Alaska App. 1987).

   Simmons motion to dismiss was based on several grounds:
a. that the state used impermissible hearsay from officer Hodges; and,
b. without the prejudicial evidence, that there was insufficient evidence to support the indictment.

   Simmons asserts that state elicited hearsay evidence from officers Hodges and Bilyue as to the charge.  Specifically, officer Hodges testified that E.A. reported the assault in the third degree and that there was no statement as to why the hearsay was necessary.  Officer Bilyue testified as to what E.A. said as to the assault and the actions of Mr. Herrera as it was reported to him.  Simmons contends that the

28

testimony of officers Hodges and Bilyue was in violation of Criminal Rule 6(r), <u>Vandiver v. State</u>, 726 P.2d 195, 199-200 (Alaska App. 1986), <u>Putnam v. State</u>, 629 P.2d 35 (Alaska 1985). Further, that E.A. and Mr. Herrera were available and that there was no compelling need shown for the hearsay testimony. <u>Galauska v. State</u>, 527 P.2d 459 (Alaska 1974) and <u>Adams v. State</u>, 598 P.2d 503 (Alaska 1979).    Finally, that officer Hodges' testimony was not merely peripheral, or cumulative to E.A.'s testimony. <u>Webb v. State</u>, 527 P.2d 35 (Alaska 1974).

Simmons contends that there was insufficient evidence to indict him.  Simmons asserts that the testimony of E.A. clearly states that she did not remember telling the officers and at the time of the incident that she assumed he did (hold a gun to her head). She further states that she "overreacted".  Thus for these reasons the indictment should have been dismissed.

### 5. Did the trial court err when it denied the defendant's motion to suppress the evidence seized from Mr. Herrera's residence?

Since the errors affected constitutional rights, and objections were raised below, the state must show beyond a reasonable doubt that the error did not contribute to the conviction. <u>Chapman v. California</u>, 386 U.S. 1824 (1967).

Simmons contends under state and federal constitutions that the trial erred in admitting the evidence seized from the Herrera residence.  Evidence seized from the residence included of the tape and the hand gun.  Simmons filed motions to suppress the materials seized.  The court denied the motions stating that Simmons did not have standing to argue suppression issues and that the informant was a "citizen informant".  Simmons took exception to the court's

29

findings and legal analysis and continued to contest the court's ruling as it failed to apply the proper standard as required. (T.R. pp. 910-911; pp. 1025-1026).

Simmons states that he had standing as to the suppression of the seized under <u>Dimmick v. State</u>, 573 P.2d 616 (Alaska 1970) and <u>Giel v. State</u>, 681 P.2d 1364 not. 1 (Alaska App. 1984). This is supported by the fact that trial court found that Mr. Herrera had reasons for not being compelled to testify (for the purposes of saving space, counsel incorporates the arguments concerning Mr. Herrera stated in 6).

The issue of the gun seizure is critical, denial of the right to litigate the issue was violation of Simmons' rights under state and federal constitutions. The tape seized was used to argue that Simmons was attempting to influence the state's primary witness, E.A. The court should have allowed Simmons the right to litigate the very important issue of the properness and lawfulness of the seizures.

### 6. <u>Did the trial court err when it failed to allow Mr. Herrera to testify or dismiss the case?</u>

Since the errors affected constitutional rights, and objections were raised below, the state must show beyond a reasonable doubt that the error did not contribute to the conviction. <u>Chapman v. California</u>, 386 U.S. 1824 (1967).

In the instant case both the state and Simmons subpoenaed and wanted Mr. Herrera to testify in the case. There was a hearing involving Herrera. The office of Public Advocacy was appointed to represent him. The court was advised that Herrera would be

30

exercising his fifth amendment right not to testify. The district attorney requested that Herrera's statement be played as he was unavailable under the rules. Simmons then moved for the court to have Herrera testify under <u>Echols v. State</u>. (T.R. pp. 847-848).

After Herrera's counsel familiarized himself with the proceedings and the basic facts of the case, a <u>McConkey</u> hearing was held. The basis for the hearing is the case <u>McConkey v. State</u> 504 P.2d 823. Herrera's counsel argued that Herrera had a right to remain silent and that Herrera's potential testimony could lead to charges against him. Simmons agreed, but made it clear that he wanted to call Herrera as his witness (T.R. pp. 884-897) The court then found that Herrera's testimony was possibly incriminating. The court then was asked for a comment about the <u>Echols</u> situation. The district attorney stated it would not be unfair if immunity was not conferred. It argued that the testimony of Herrera is not crucial to the defense because of the use of other information to impeach him. The district attorney stated that at most Herrera would testify that he purchased the gun and never gave it back to Simmons. Simmons stated that only Herrera could provide exculpatory information. The court ruled on the matter. It ruled that it would not be fundamentally unfair if it did not confer immunity. Simmons argued with the court analysis of the case. The court stated it found the analysis was different. It stated that Herrera was not in the same position, Herrera could be implicated as an accomplice. The court stated that Herrera was not going to testify for anybody. (T.R. pp. 900-910).

31

Simmons contends that the trial court, in considering the issue of Herrera's statements and actions, erred by failing to properly consider the Echols case. The court in the case of State v. Echols, 793 P.2d 1066 (Alaska App. 1990) addressed the issue of immunity being conferred by the court. In that case the trial court dismissed several counts when the state refused to grant immunity. The court found that there was the authority to dismiss if immunity was not offered. Echols, at 1075. The court in determining this issue reviewed the five requirements which the defendant must meet in order to obtain immunity for a witness. These steps are: (1) the defendant must properly seek immunity in the trial court; (2) the defendant must show that the witness is able to testify; (3) the defendant must show that the testimony was clearly exculpatory; (4) the defendant must show that the testimony is essential to the defendant's case; (5) the court must find there is no strong countervailing governmental interest. Echols at 1071, note 2.

In this case Simmons follow the stepes. He made application at trial, Herrera was at the trial, the offer was that he did not give Simmons the gun, the testimony was essential since there was no other persons present at the alleged crime but Simmons, Herrera, and the complaining witness; and there were no countervailing interests stated by the court. The district attorney only stated that the proposed testimony would be impeached with other testimony.

The state of Alaska, if had wanted to prosecute Herrera, could have done so by then under an accomplice theory. The case had been going for

32

a number of months, so it is highly unlikely that state was still in the stage of investigating the matter for possible review (after all it had called Mr. Herrera to the grand jury). Thus, given the importance of the testimony, the case should have dismissed as to those two counts.

Simmons contends that the court made Herrera a co-defendant under a theory of accomplice liability. This is in conflict with the court's denial of that Simmons had standing to move to suppress the admissibility of the tape found at Herrera's residence.

Simmons contends that the court was in error in several ways. First, the denial of Herrera's testimony was fundamentally unfair as to Simmons' case for two reasons. One, if the jury believed Herrera's testimony that he never gave gun back to Simmons after purchasing it: then Simmons could not have been guilty of felon in possession. Two, if the jury believed testimony of Herrera that he never gave the gun back to Simmons over the testimony of E.A., then Simmons could not be found guilty of third degree assault. In both these instances the proposed testimony as stated by the district attorney would effectively contradict an essential element of these charges. There were no other witnesses to these charges except Simmons available. Mr. Herrera was an important witness, whose actions were part and parcel of the allegations against Simmons.

Second, the court actions denied Simmons the right to put on a defense and present a witness on his behalf (this forced him to take the stand). This important right is protected by both the constitutions of the United States and the state of Alaska. The case of <u>Hawley v. State</u> 614 P.2d 1349 (Alaska 1980) is explicit as to the deference that must given in this area.

33

Given the overall situation and the applicable case law, the trial improperly constricted Simmons' right to cross-examine the witness against him.  Therefore the judgment should be vacated and the case remanded back for trial.

### 7. Did the trial court err in allowing the statement of Mr. Herrera to be admitted and in depriving Simmons the right to confront him for the purpose of cross-examination?

Since the errors affected constitutional rights, and objections were raised below, the state must show beyond a reasonable doubt that the error did not contribute to the conviction.  Chapman v. California, 386 U.S. 1824 (1967).

Simmons contends that the actions of the court were improper for two reasons: 1) the actions of the court deprived Simmons of the right to cross-examine a witness against him: Mr. Herrera; 2) that the court erroneously allowed the statements of Mr. Herrera in under an improper analysis of the exception as to the hearsay rule that allows the admission of statements against penal interests.

The case law in the state of Alaska clearly recognizes that important right to confrontation.  The case of Hawley v. State, 614 P.2d 1349 at 1358 (Alaska 1980) emphases the importance of the right at 1359.

The court had previously ruled that Herrera was not going to testify for anyone. The court then let Herrera's statements against Simmons in under the co-conspirators/co-defendant's rule and that it was a statement against penal interest.  Simmons contends that this was an incorrect act of the trial court. First, it made Herrera a co-defendant for defacto purposes.  This a violation of the doctrine of separation of powers. It is the function of the

34

district attorney's office to charge.  Second, even if it was a correct action by the superior court to make a witness of the state and defense witness a co-defendant, it used improper to allow Herrera's statements to come in.

To examine this situation correctly, then context of the situation must be explained.  E.A. made an accusation of burglary and assault against Simmons.  During the course of the investigation of that matter she stated that Simmons had assaulted her with a weapon.  It was disclosed that the gun was allegedly brought over by Mr. Herrera, held to her head, and then Mr. Herrera left with the firearm.  E.A. then said the gun would be at Mr. Herrera's house.  The officers received a search warrant for Mr. Herrera's residence, where they found it.  Mr. Herrera supposedly made equivocating statements that he took the firearm over to Mr. Simmon's residence. The officers when they came through the door found Mr. Herrera nude in bed with a woman.  The statements were later refuted.   The court stated that the statements were admissible as they were against interest.

In Amidon v. State, 565 P.2d 1248 (Alaska 1977) the court established when a co-defendant's hearsay statements are admissible.   The court established that the appropriate circumstances are: that the declaration must have been made while a joint undertaking was continuing, that the statement must have been made in the further of the joint undertaking. Id. at 1259.  In this case there was no establishment by the court that there was a joint undertaking between Mr. Herrera or Simmons by a preponderance of the evidence.  Also, the statement was after the completion of

35

the alleged act, not in the further of the crime. Mr. Herrera made his statement when he was confronted with the allegation by E.A. as to an act that supposedly occurred several weeks before.

The court indicated in its ruling that there were sufficient indications as to reliability to make it permissible for Mr. Herrera's statements to come in. Simmons contends that the court was in error as to that finding. The court in <u>Hawley v. State</u>, held that to satisfy the right to confrontation, a statement must have sufficient indicia of reliability. <u>Id</u>., at 1358. The court in <u>Hawley</u> adopted the test articulated in <u>United States v. Snow</u>, 521 F.2d 730 (9th Cir. 1975). <u>Id</u>., at 1358. The factors that must be met are: (1) the declaration contained no assertion of past fact,...(2) the declarant had personal knowledge of the identity and role of participants in the crime; (3) the possibility that the declarant was relying upon faulty recollection was remote; and (4) the circumstances under which the statements were made did not provide reason to believe that the declarant had misrepresented the defendant's involvement in the crime. <u>Hawley</u>, at 1359. In the case at bar, the statements of Mr. Herrera do not fit the factors set forth by <u>Hawley</u>.

Simmons further contends that the court was in error in its analysis of statement against penal interest as an exception to the hearsay rule, A.R.E. 804(b)(3), that it based the admittance of Mr. Herrera's statement to the jury. The cases of <u>Newcomb v. State</u>, 779 P.2d 1240 (Alaska App. 1989) and <u>Shakespeare v. State</u>, 827 P.2d 454 (Alaska App. 1992) outlines policies of this rule. It was made clear that the declarant had to know that he or she was subject to

36

prosecution. <u>Shakespeare</u>. at 457.   In this case Mr. Herrera's statement does not indicate such an awareness of being subject to prosecution. Mr. Herrera was not charged, not was he even advised that the statement he made could be used against him by receiving an <u>Miranda</u> warning from the officers (thus alerting to such a possibility). A reasonable person would not have believed that he was in a position possible of prosecution: the focus of the actions of the officers was to find evidence of Simmons alleged actions. For this reason the statements of Mr. Herrera should have not been admitted to the jury.   Thus the conviction should be reversed.

   8.  <u>Did the trial court err in limiting Simmons' cross examination of E.A.?</u>

   Since the errors affected constitutional rights, and objections were raised below, the state must show beyond a reasonable doubt that the error did not contribute to the conviction.   <u>Chapman v. California</u>, 386 U.S. 1824 (1967).

   The states case, due to the various protective orders issued by the court, would stand or fall on the credibility of E.A. During the course of the trial Simmons wanted to cross-examine E.A. on several areas: whether or not the witness was on a controlled substance during the time she perceived the events, whether there was a deal between she and the state in regards to her testimony, and whether she was improperly influenced by a false indictment. The court denied his request.

   A. <u>Controlled substance</u>: One of these areas was whether or not she was on a controlled substance at the time during the September incident. She stated that Simmons admitted to speaking to Mr.

Herrera. He asked if E.A. was under the influence of drugs at the time. The district attorney objected and the court sustained it. (T.R. p. 588). Simmons contends that this was improper since it went to the issue of how she may have mispreceived the incidents under the influence of the controlled substance.

B. E.A.'s deals with the state: Simmons then made application to bring up the fact that the State had made a deal with E.A. to testify consistent with the police statements in exchange for charges being dropped. The district attorney objected as she was not charged with anything. The court took judicial notice that any cases against her had been dismissed so that anything about that situation was irrelevant. (T.R. pp. 604-605). Simmons was attempting to show that E.A. was motivated to testify against out of fear as to her own prosecution as well revenge. This is supported by her own testimony. E.A. testified that she told the grand jury that she received the injuries due to a fall. She further confirmed that she told the grand jury that she wanted revenge. At the time she was tired, that she was under a lot of pressure and didn't want to deal with him and that the only way to get rid of him was to call the police. (T.R. pp. 583-585)

E.A. then confirmed that she was coached in her statements and was provided a tape by a secretary at the district attorney's office. E.A. also testified that she was testifying differently than in the grand jury. She stated that was told to by Sgt. Bilyeu and the D.A.'s office to testify. E.A. testified that she was threatened to be put in jail if she spoke up for David (Simmons). She then testified that she had charges brought up against her and

Ex. D, p. 57

the court sustained the district attorney's objection (T.R. pp. 585-587). Simmons indicated to the court that state had made a deal with the witness, the state objected and the court ruled that the evidence was irrelevant. (Tr. pp. 603-606).

Simmons asserts that E.A. was being forced to testify against him; this is supported by the criminal docket in Bethel, Alaska. During the pendency of the action, E.A. had two cases that were pending until just before trial. E.A. was charged in the case of State of Alaska v. E.A., 4BE-S91-74 Cr. This case involved two counts of assault and one count of disorderly conduct. One count involved an assault against an officer. This case was dismissed by the district attorney's office. E.A. had yet a further case, State of Alaska v. E.A., 4BE-S91-136 Cr. This case involved an allegation of perjury (a class B felony). This case was also dismissed before trial. Simmons should have been able to bring out these materials during the trial to show that there was corroboration as to the statement that E.A. was being forced to testify.

Simmons contends that the reviewing court should review the case of State of Alaska v. E.A. 4BE-S91-136 CR as it demonstrates the actions of the court and the district attorney in the present case. E.A. was indicted for perjury concerning her actions in relation to Simmons. Specifically she was charged with perjury on February 28, 1991. (See motion to supplement record: case of State v. E.A., 4BE-S91-136 CR)

A review of the log notes clearly show that there was a deal between Ms. E.A. concerning her testimony against Simmons. The

39

district attorney continued E.A.'s matters as a part of the deal concerning her testimony against Simmons.  A review of the log notes also reflects that Judge Curda knew of this deal.  The case was ultimately dismissed by the state of Alaska. (<u>See</u> motion to supplement record.)

C. <u>Precluding introduction of evidence that the state improperly influenced E.A. by a false indictment</u>:

Simmons opening statement indicated that E.A. had fabricated and exaggerated the assaults incidents and that she had attempted to withdraw the charges.  Simmons also stated that she was then the subject of subsequent improper influences by the state and police to compel her to testify consistently with her original statements. (Tr. pp. 949-51).

E.A. was impeached during cross-examination with her grand jury testimony.  E.A. generally explained away the impeachment by alleging that Simmons had told her to say these things. When the witness further indicated that she was not testifying to "please David, the D.A. or the police department," Simmons made application to impeach this assertion by introducing evidence of E.A. February 22nd affidavit, filed on February 26 1991 (Tr. pp. 600-606)(the affidavit indicates that the police had manipulated E.A.'s judgment)(Tr. pp. 973).

Simmons attempted to lay proper foundation to admit the affidavit and the court sustained the state's objection, again on hearsay grounds; Simmons argued that the contents were not hearsay and that if the witness adopts the statements, no hearsay problems arises. (Tr. pp. 607-609). Simmons asserts that the court's ruling

40

was in error and the preclusion of the evidence was an abuse of discretion.

As noted supra, the state instructed officer Bilyue to ascertain E.A.'s position. (Tr. pp. 508-512, 526-536). The state also indicated that E.A. was charged with perjury because it appeared that a relevant portion of the affidavit contradicted E.A.'s earlier statement.

During the state's case in chief, officer Bilyue was allowed to testify, over objection that he had received a recording instructing E.A. to lie with respect to the affidavit submitted on February 26, 1991. (Tr. pp. 721-32). On cross-examination, Simmons asked officer Bilyue whether E.A. had ever denied receiving the tape in question and the court sustained the state's irrelevancy objection. (Tr. pp. 768-771). However, the state never established whether E.A. had in fact received or listened to the tape. (State's exhibit # 20)  In fact, E.A. had indicated that she had not. (Tr. p. 976).  Yet, in spite of this testimony, the tape was played to the jury.  (Tr. p. 728).

Because E.A. had knowledge of the "business involving Mr. Simmon's arrest in 4BE-S90-552," (Tr. p. 968) the affidavit took on significant importance as it was offered to clarify the context in which the verb "to have" was used. The affidavit, a document of clarification, was being introduced to for a number of reasons. First, to refute officer Bilyue's misleading representation to magistrate McMahon, which resulted in the search warrant and the seizure of Mr. Herrera's hand gun. Second, because officer Bilyue "believed" that this handgun was possibly the same hand gun

41

searched for but not discovered for which Simmons was arrested for on July 23, 1990. The search was not about the allegations that E.A. made that evening. Third, the officer's reference as to the gun being at Mr. Herrera's residence was to impute a constructive possession of the firearm by Simmons.

The affidavit was to be used for a fourth reason: to show that the state's contention that Simmons had instructed E.A. to lie in regards to affidavit (Tr. pp. 507-508/729-732) were in itself false and misleading. The tape introduced into evidence does not suggest improper influence, nor was it shown that E.A. had ever received and listened to it. (Tr. pp. 719-730/976). The line cited by the police and state, as evidence of tampering was clearly to encourage the witness to be truthful. (See witness E.A.'s affidavit of Feb. 22, 1991). A fifth reason was to show that E.A. was being induced to testify via the perjury prosecution and to expose the agreement (to contradict her testimony). This affidavit would have shown that E.A. had testified falsely before the trial jury with the state's and trial court's knowledge. Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 360 L.Ed. 2d 1217 (1959). The case of Alcorta v. Texas, 355 U.S. 28,  78 S. Ct. 103, 2 L. Ed. 2d 9 (1959) states that the state may not knowingly use false evidence, including false testimony, to obtain a tainted conviction.

D. Conclusion:

A defendant's right to cross-examine in a criminal case is secured by the confrontation clauses of the United States and Alaska Constitutions. U.S. Const. amend. VI; Alaska Const. art. I, section 11. Davis v. Alaska, 415 U.S. 308, 316 (1974) states and

42

re-enforces the importance of this right. The trial court must be particularly solicitous toward cross-examination that is intended to reveal bias, prejudice, or motive to testify falsely. See Evans v. State, 550 p.2d 830 (Alaska 1976), United States v. Abel, 469 U.S. 45, 105 S.Ct. 465, 469, 83 L.2Ed. 450 (1980). This was most recently stressed by the court of appeal in the case of Wood v. State, (Opinion No. 1241, issued August 14, 1992). In that case the court of appeals confirmed that the right to cross-examine is fundamental. This was confirmed in the case of Hawley v. State, 614 P.2d 1349 at 1358 (Alaska 1980).  It is an abuse of discretion if the jury does not receive information adequate to allow it to evaluate the bias and motives of a witness. Stumpf v. State, 749 P.2d 880, 901 (Alaska App. 1988).

Simmons was trying to show that E.A. was testifying against him under the threat of prosecution and there was a deal. It was already clear that she was angry at him and wanted revenge.(T.R. pp. 585)  He was also trying to show that her perceptions of the events could have been flawed due to the influence of controlled substances.

Simmons was entitled to have the jury know what happened to E.A.'s charges, "including the role the state had played". United States v. Masino , 275 R.2d 129, 132-33, (3rd Cir. 1960). United States v. Musgrove, 483 F.2d 327, 338 (5th Cir. 1973) cert. denied 414 U.S. 1023, 94 S.Ct. 447, 38 L.Ed 2d 316.  The jury had the right to know that E.A. had a powerful incentive to testify the way she did in Mr. Simmon's trial. Shakespeare v. State, 827 P.2d 454 at 458 (Alaska App. 1992).

On the failure to permit examination of a witness' bias, the court in Hutchings v. State, 518 P.2d 767 (Alaska 1974) reversed the trial

43

court's ruling sustaining the state's "irrelevancy objection" because the undercover agent had been subsequently discharged from the police force and was at the time seeking reinstatement. Similarly, E.A. testified when there was an undisclosed agreement. The state's dismissal of the charges just before trial when there was a deal was indicative that the state was trying to keep E.A. in line and try to keep her from being impeached via Evidence Rule 609. In this way the state was not playing fair and the judge knew the circumstances.

The evidence that Simmons wanted to introduce was material to his defense as it dealt with E.A.'s credibility and bias as to the case. It was not overly prejudicial as to the witness in this case. Several cases recognizes that prejudice carries less weight when the person about whom the evidence is introduced is not the defendant. Olden v. Kentucky, 488 U.S. 227, 109 S.Ct. 480, 102 L.Ed.2d 513 (1988); Pennsylvania v. Ritchie, 480 U.S. 39, 107 S.Ct. 989, 94 l.Ed. 2d 40 (1987); Crane v. Kentucky, 476 U.S. 683, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986). The court should remember that Evidence Rule 608 not as restrictive as the trial court deemed it and Evidence Rule 613(b) permits impeachment by inconsistent statements and conduct.

Simmons contends that under the circumstances, that the trial court's error in precluding his cross-examination of E.A. as to her motivations and whether or not her perceptions were influenced was not harmless error beyond a reasonable doubt. Thus the conviction must be reversed and the case remanded.

44

9. **The trial court abused its discretion in excluding evidence probative of a material proposition to the defense case?**

During the defense portion of the case, E.A. was called and questioned about the October 20, 1990 incident. At this point the court sustained the state's relevancy objection. Simmons indicated that the evidence of an identical claim was being established (1) bias and (2) motive and intent. The court ruled that the evidence of a "future bad act" was not relevant, and was far out-weighed by unfair prejudice and would mislead the jury. (Tr.pp. 980-983). Simmons asserts that the trial court erred and abused its discretion by excluding this evidence.

E.A.'s initial report alleges Simmons pointed a weapon at her person but that she couldn't say what it was; that she "assumed" it was a gun and that "she was told that it was, but that it was...", but it was dark. (Tr. pp. 561-562). The October 20, 1990 claim was made in the presence of three witnesses and E.A. denied having made the claims. (Tr. pp. 980-983). On cross-examination, E.A. was asked whether she made a similar claim and she indicated she had. (Tr. p. 627). E.A. was asked whether she had lied under oath before the grand jury: she answered yes, no, and that she did not know. (Tr. 600).

Mr. Simmon's theory of the case was that the witness had developed a motive prior to the improper influence brought on by police and state action. (Tr. p. 950; pp. 1004-1014).

The fact that the evidence offered was a subsequent act, but prior to trial is not a sufficient ground standing alone for excluding the evidence. Hutchings v. State, 518 P.2d 767 (Alaska 1974). The evidence that Simmons wanted to bring in was probative of E.A.'s veracity because of the other witnesses and the reporting of the claim. This is further

45

important because she then repudiated the claim and refused to file a
police report and then denied the allegation before the November 20,
1990 grand jury. The "subsequent bad act" merely makes it more probable
than not that E.A. intended to make a false claim to rid herself of
Simmons.  Simmons also tried to show that E.A. was high on cocaine at
the time she made the claims. (Tr. p. 442; 1051).

Simmons tried to cross-examination officer Bilyue regarding the
October 20, 1990 incident.  The stated objected and sustained the
relevancy objection.  The court indicated to the defense that if it
wished to impeach E.A., why didn't do during the examination of the
witness. (Tr. pp. 770-772). After the state rested, Simmons called E.A.
He attempted to examine her as to the October 20, 1990 incident. Again
the court sustained the state's objection. (Tr. pp. 980-983).  Simmons
asserts the trial court erred in precluding favorable evidence for the
defense and the error affected substantial rights.

The evidence was probative under Evidence Rule 401. Simmons had the
right to impeach E.A. under Evidence Rule 607.  Evidence Rule 403 is an
extraordinary remedy and is to be exercised sparingly because it permits
the court to exclude other wise relevant evidence.  United States v.
Meester, 762 F.2d 867, (11th Cir. 1983).  The general rule is that the
balance should be struck in favor of admission. United States v. Day,
591 F.2d 861, (D.C. Cir. 1978). Kugzruk v. State, 436 P.2d 962 (Alaska
1968).

The courts have been instructed, when exercising discretion in
applying this rule, to (1) consider the importance of the fact of
consequence for which the evidence is offered in the context of the
litigation, (2) the strength and length of the chain of inference

46

Ex. D, p. 65

necessary to establish the fact of consequence, (3) the availability of alternative means of proof, (4) whether the fact in consequence for which the evidence is offered is being disputed, (5) the potential effectiveness of a limiting instruction, and (6) evaluate the incremental probative value of evidence.  22 C. Wright and K. Graham, Fed. Practice and Procedure; Evidence 5214 at 265-66 (1978). Cano v. Anchorage, 627 P.2d 660, 663 (Alaska App. 1981); Babcock v. State, 683 P.2d 721, 726 (Alaska App. 1984).

In the instant case, Simmons offered the October 20, 1990 incident as "repetitive evidence" similar in kind and close in proximity to the charged offense "to establish a material proposition of the defense case." (T.R. pp. 981-983).  When the defense offers similar acts evidence about a witness to prove a fact pertinent to the defense's case, the normal risk of prejudice is absent. United States v. Abou Mussellem, 726 F.2d 906, 911-912 (2nd Cir. 1984).

The trial judge tried to distinguish the conduct of E.A. by stating that it is subsequent to the charge and simply because she perjured self in a subsequent event doesn't she didn't perjure herself in reporting the September incidents.  However, the evidence offered was not that she simply was a liar as it was used in Hutchings, but to show the course of bias, lack of mistake, and for the further inference that E.A. was fabricating her statements.  Preclusion of the evidence, coupled with an appropriate limiting instruction, was a violation of Simmons substantive rights and the error was not harmless.

10. Was there insufficient evidence to support the charge of assault in the second degree?

47

In ruling on the sufficiency of the evidence at trial, the appellate court must view all the evidence in the light most favorable to the state and determine if "fair-minded (jurors) in the exercise of reasonable judgment could differ on the question of whether guilt had been established beyond a reasonable doubt(.)" <u>Dorman v. State</u>, 622 P.2d 448, 453 (Alaska 1981); <u>Siggelkow v. State</u>, 648 P.2d 611, 613 (Alaska App. 1982); <u>Young v. State</u>, (App. No. 1285: issued February 26, 1993).

Simmons was charged with assault in the second degree in the indictment. In this count, the state alleged that E.A. was injured with a dangerous instrument (i.e. the various household articles of a phone, phone cord, humidifier, flashlight, babyswing). These items do not fall under those items that are statutorily defined as being dangerous instruments. The testimony in the case does not support this charge. Specifically, she did not testify that she was afraid of the items. E.A. did, however, state that she was struck and there was some injury.

Dr. Gina Buono testified that she was a medical doctor practicing in Bethel, Alaska. She testified that she examined E.A. on September 26, 1990. Dr. Buono testified that there was a laceration, a bruise on the cheek and an abrasion to E.A.'s chest. It was testified that the cut did not need sewing, it just required cleaning. Dr. Buono stated she observed that there was blood on E.A.'s bra and pants. (T.R. pp. 834-839).

Simmons cross examined Dr. Buono. She stated that the cut was two centimeters in length. E.A. denied any nausea or dizziness. She confirmed that it look like a large injury until it was cleaned up and that no stitches were required. There was no indication of intoxication

and that E.A.'s demeanor was calm, alert, and in no apparent distress. (T.R. pp. 839-842)

The Court of Appeals recently addressed some of the issues regarding dangerous instruments and serious physical injury in the case of <u>Willett v. State</u>, (Alaska App. Opinion No. 1240, Issued July 31, 1992). In <u>Willette</u> the defendant that there need to a lesser included instruction as to fourth degree assault. <u>Willette</u>, at p.2. In that case the contention was whether or not the defendant's shod foot was a dangerous instrument. The court in reaching its decision to overturn the conviction first looked at the statutory definitions involved. The Alaska legislature has defined both "dangerous instrument" [11.81.900 (b)(11)] and "serious physical injury" [AS 11.81.900 (b)(50)]. Simmons contends that the items were not dangerous instruments.

In the case of <u>Konrad v. State</u>, 763 P.2d 1369 (Alaska App. 1988) the Court of Appeals addressed several of the issues surrounding the second degree assault statute. The court in <u>Konrad</u> made it clear that "(i)t is the actual use of the instrument that must be considered, not abstract possibilities for use of the instrument in hypothetical cases." <u>Konrad</u>, at p. 1373. In the case of <u>Wettanen v. State</u>, 656 P.2d 1213, 1217 (Alaska App. 1983) the courts cautioned that "every...blow, even if it causes serious injury, will not be an assault with a dangerous weapon." The court further noted that the focus of the trier of fact should not be injuries, but "to the manner in which the assault was committed." <u>Id</u>. at 1218.

It was established in <u>Konrad</u> that "whenever serious physical injury does in fact occur, there will be prima facie evidence to support that

49

a dangerous instrument was used. Conversely, when serious physical injury does not occur, other case specific evidence must be adduced to establish that the risk of such injury was both actual and substantial, even though it did not in fact occur." <u>Konrad</u>, at 1374.

As noted earlier, there was no "serious physical injury" to E.A. Nor was there testimony to show that the cut was disfiguring or that it was disfiguring. Nor was there testimony that the injury that did occur were life-threatening or that it created a substantial risk of death. Simmons contends that it was improper for the jury to have convicted him of a second degree. Therefore judgment on that count must be vacated.

11. <u>Did the trial court err when it denied the statutory mitigators requested at sentencing and finding of the aggravators requested by the state? Should the unverified materials have been struck from the presentence report?</u>

The standard of review is that the trial court's rejection of the mitigator will be affirmed unless clearly erroneous. <u>Degler v. State</u>, 741 P.2d 659 (Alaska App. 1987).

The state argued the aggravators in the case. (T.R. pp. 1230-1232) Simmons objected to the various aggravators. He cited both <u>Jones</u> and <u>Juneby</u>. It was argued that the conduct under <u>Jones v. State</u>, 765 P.2d 197 (Alaska App. 1988), would have to extremely egregious, basically gratuitous infliction of torture violence. It was argued that Simmons did try to help per her testimony and that damage was no that severe according to the testimony of the doctor. (T.R. p. 1234)

Simmons also argued under <u>Whitton</u> that there was a merger as to the assaultive conduct given the course of the events. <u>Whitton v. State</u>, 479 P.2d 302 (Alaska 1970) It was argued that the, according to the victim, he grabbed whatever was available. (T.R. p. 1235)

50

Simmons argued that aggravator 19 was not applicable since no record of it was ever provided. He argued that aggravator 21 should not be found. Also, he argued that 4BE-S90-552 should not be considered. Finally, he argued that the Canadian material was not provided or from other jurisdictions outside of Colorado. (T.R. p. 1236-1237)

Simmons argued the mitigators. First, it stated that D-4 was withdrawn from consideration. Under D-6, it was argued that there was testimony by the witnesses that there was some fighting and it was then that she received the nick in the head. It was argued that the situation was least serious citing the fact that the doctor noted no real physical impact beyond a nick in the head. It was argued that there was testimony that the injury occurred when the two of them fell down while in the baby's room. It was argued that the burglary aspect was least serious since was not the home of a stranger and there was testimony that she said he could come over at one time. (T.R. pp. 1237-1238)

Counsel argued that A.S. 12.55.155.(d)(13) applied. Simmons had substantial periods of time without problems. The district attorney opposed the mitigators. There was argument as to what prior felonies were going to be used. Simmons argued that only the Bethel cases could be used. The state argued that the materials from New York could be used because Simmons didn't object to it previously. Simmons addressed the court. He stated that he himself conducted the trials in 105 and 328. He stated there was no waiver as to the pre-sentence material. (T.R. pp. 1239-1244)

The court ruled aggravator 8 merged with aggravator number 21 under Juneby. He found that number 12 was proven by clear and convincing evidence. The court also found that there was clear and convincing

evidence as to aggravator 15.    The court also found that there aggravator number 19 based on the non-objection in two prior sentencing. The court also found that aggravator number 10 was proven.   The court found that it was amongst the most serious as to assault seconds. As to the assault three, the court found it to be one of the most serious based on the testimony that it took place over a period of time and that Simmons sent Mr. Herrera to bring the gun over to his house. The court then ruled on the mitigators.   (TR. pp. 1244-1248).

In Juneby v. State, 665 P.2d 30 (Alaska App. 1983), the court stated that the process of establishing mitigators and aggravators was a two step process.   The first step is compromised of establishing existence of specifically alleged factors.   Under A.S. 12.55.155(f) each alleged factor must be proved by clear and convincing evidence, and the proponent of the factor bears the burden of proof.   The process is an evidentiary one: the state must prove the aggravator.   The second step is the adjustment of the presumptive sentence either upward or downward as determined by the court. Id., at 32. The appellate court cautioned that the sentencing judges are required to rely on only those factors pertaining to the alleged aggravating or mitigating factors that are supported by clear and convincing evidence. Id., at 32.

The court received the ordered presentence report before sentencing Simmons.   Much of the pre-sentence report was based upon the prior presentence report of Simmons's earlier case.   Much of the material was unverifiable: the juvenile conviction; the reasons that Simmons was deported from Canada.   The only verifiable felony material that was presented was the present offenses and prior Bethel offenses.

Simmons contested the presentence report as much of the material was unverified. The court found that Simmons had waived any contesting of this material since it had been used previously. This was in error.

In a sentencing proceeding it is critical that the judge have available a great amount of information in order to fashion an appropriate sentence. The supreme court quoted in <u>Nukapigak v. State</u>, 576 P.2d 982, 984 (Alaska ) that "Highly relevant-if not essential-to [a trial judge's] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics. And modern concepts individualizing punishment have made it all the more necessary that a sentencing judge not be denied an opportunity to obtain pertinent information by a requirement of rigid adherence to restrictive rules of evidence properly applicable to [a] trial." [quoted in <u>Elson v. State</u>, 633 P.2d 292, 301 (Alaska App. 1981)].

The same can be said for the defendant in this case. The defendant has the right to have materials proposed in the presentence report verified. The defendant must be able to cross examine the material to make sure that is proper and there are no errors; a waiver of prior materials can lead the compounding of errors. In the case at bar this was true with the Colorado conviction. It was only after contesting it was it learned that it was in fact a misdemeanor. (T.R. p. 1224)

The trial court at sentencing considered the various aggravators as set out in A.S. 12.55.125(c). The trial court found aggravator (2): the defendant's conduct during the commission of the offense manifested deliberate cruelty to another person. Simmons contends this was in error. The testimony as to injury does not support this position.

53

Simmons contends the action do not that constitute deliberate cruelty as it was found in other cases as found in the cases of <u>Peetook v. State</u>, 655 P.2d 1308 (Alaska App. 1982) and <u>Pruett v. State</u>, 742 P.2d 257 (Alaska App. 1987). Clearly the conduct of Simmons did not rise to the level of actions that these other defendants committed.

The trial found aggravator (4): the defendant employed a dangerous instrument in furtherance of the offense. Simmons contends that this aggravator should have been denied since the defendant was being sentenced individually for the dangerous weapon (in the case of the possession firearm and the fact that assault in the second degree has the element of a dangerous weapon).

The trial court found aggravator (8): the defendant's prior criminal history includes conduct involving aggravated or repeated instances of assaultive behavior. Simmons contends this was in error since the presumptive sentencing scheme was already taking this into contention. Further, that this alleged conduct would be improper for consideration since the judge was in fact a district attorney during the pendency of the case.

The trial court found aggravator (10): the conduct constituting the offense was among the most serious conduct included in the definition of the offense. Simmons contends that in instance the trial court was in error in finding this aggravator. First, that the injury to E.A. was not amongst the most serious in either the instance of assault in the home involving the household instruments. Second, that assault in the third degree involving the firearm was not amongst the most serious. There was no action (according to E.A.) beyond the holding of firearm to her in the form of a threat. It is clear that she did not consider it

that serious since she later invited him to her home some days later and did not report it until September 26.

The trial court found aggravator (15). Simmons contends that the record in this case does not support this since the state failed to give the appropriate documentation to verify the contention. Simmons contends the court cannot waive his right to contest evidence being used to increase his incarceration. Therefore this aggravator should have been denied by the trial court.

The trial court found aggravator (19). Simmons contends that the record in this case does not support this since the state failed to give the appropriate documentation to verify the contention. Simmons contends the court cannot waive his right to contest the evidence being used to increase his incarceration. Therefore there the finding of this aggravator should have been denied.

The trial court found aggravator (21). Simmons contends that the record in this case does not support this aggravator since the state failed to give the appropriate documentation to verify the contention. Simmons contends the court cannot waive his right to contest the evidence being used to increase his incarceration. Therefore this aggravator should have been denied.

The appellant contends that trial court next failed in the second step of the Juneby analysis. The court failed to state on the record the weight that it was given each aggravator as to the individual crime and why the presumptive term could not adequate address the policies of sentencing. In this case the court also failed to state and adequately address why it was departing so significantly from the public policies set forth in Juneby at 39.

Ex. D, p. 74

In the case at bar the court found all the aggravators and found, given the fact the maximum sentences were imposed consecutively, that Simmons' actions were at the far ended of the spectrum. In fact, given the sentencing, that he in fact must set the standard for the worst in all categories. This is patently not true. Therefore the sentencing courts order should be vacated and Simmons be re-sentenced more in line with the public policies set forth in <u>Juneby</u>.

The sentencing court should be reminded that "(t)he mere fact that aggravating factors have been established by clear and convincing evidence does not of itself require aggravation of a sentence. <u>Braaten v. State</u>, 705 P.2d 1311, 1323 (Alaska App. 1985)

The sentencing court denied the defendant's requested mitigator (d)(6). Simmons testified that there was fighting between he and E.A. The sentencing court denied the defendant's requested mitigator (d)(9). Simmons contends testimony of E.A. and Dr. Buono clearly supports this contention. Also, the sentencing court denied the defendant's requested mitigator (d)(10). Simmons contends that during the time that E.A. was injured, he tried to give her aid, but she refused and left the residence.

The sentencing court denied the defendant's requested mitigator (d)(13). Simmons contends that the only verified actions before the were the Colorado conviction (a misdemeanor) and the acts in Bethel. Thus the mitigator should be found.

E.A. testified that she told the grand jury that she received the injuries due to a fall. She further confirmed that she told the grand jury that she wanted revenge. At the time she was tired, that she was

Ex. D, p. 75

under a lot of pressure and didn't want to deal with him and that the only way to get rid of him was to call the police. (T.R. pp. 583-585)

12. <u>Was Simmons' sentence excessive?</u>

A sentencing judge's decision is conducted under the "clearly mistaken standard established in <u>McClain v. State</u>, 519 P.2d 811, 813-14 (Alaska 1974).

The discussion of the mitigators, aggravators and problems with the pre-sentence report are detailed earlier in the appeal and are hereby incorporated by reference.

As noted earlier, the district attorney asked that the maximum sentences be imposed. Counsel for the defendant disagreed. It was argued that the assault and the burglary charge had to be run concurrent. Counsel argued that Simmons was bright, articulate, and there was hope for the future. It was also argued that rehabilitation always had to be considered citing <u>Nelson v. State</u>, 619 P.2d 480. Simmons noted that Judge Hansen had already sentenced Simmons to 10 years in jail in the case of 4BE-S90-552. <u>Waters v. State</u>, 483 P.2d 199 (Alaska 1971) has come to mean that the court must consider previously imposed sentences. It was again noted that the theory of estoppel as to the prior material in the pre-sentence report was improper. The court was not going to give it much weight; but the court wasn't going to strike it from the report. Counsel argued that the times for the counts should be run concurrent instead of consecutive. It was requested that Simmons be given the minimum time in light of the time imposed on 4BE-S90-552. Simmons then spoke on his own behalf. (T.R. 1251-1260)

The court then recessed and reconvened for the sentencing. The court considered the <u>Chaney</u> criteria. The court first found that Simmons

was a worst offender based on his prior record and his conduct in Bethel. He stated that he was considering the prior convictions from other jurisdictions, but not giving them much weight. The court determined that it was considering isolation and specific found there should be a flat time sentence and there be no probation. (T.R. pp. 1260-1262)

The court then determined that Simmons was a dangerous offender. This was based primarily and mainly on the course of conduct in Bethel. Specifically, stating that there was two serious assaults, that he had a weapon when wasn't supposed to and occurred while he was on release. This occurred have recently come back to Bethel after serving a substantial amount of time. The court noted the sexual assault in the first degree which was reduced to assault in the third degree and the assault on an officer.  It stated that there were no onditions that court could impose to protect the community and that the sentences would be consecutive.  The court imposed ten (10) years on Count I, ten (10) years on Count II with the time to be consecutive.  Counts III and IV was also given five (5) years each to be consecutive.  The court noted it take into consideration the aggregate term and that it was imposing a term of thirty (30) years.  It noted that Simmons was sentenced to forty years when taking in account the case of 4BE-S90-552. (T.R. pp. 1262-1265)

Simmons contends that the court erred in giving consecutive sentences in this case.  Simmons contends the record (without the objected materials) is inadequate to find that the sentence imposed is necessary to protect the public as required by <u>Lacquement v. State</u>, 644 P.2d 856 (Alaska App. 1982) and <u>Bolhouse v. State</u>, 687 P.2d 1166 (Alaska

App. 1984). <u>Lacquement</u> requires that where imposing consecutive presumptive terms produces and aggregate sentence exceeding the presumptive term for a single count, the sentencing court must specifically find that consecutive sentencing is necessary to protect the public. <u>Lacquement v. State</u>, at 862. In this case the judge stated the finding, but Simmons contends that the record does not support such a finding in enough specificity.

Finally, the court did not consider or state for the record any benchmark as to what a sentence should be. The court has repeated stated that when an offender is convicted of multiple crimes, the presumptive term of the most serious crime remains an important benchmark-a benchmark that is not to be exceeded without good reason. Under <u>Jones</u>, however, the appropriate focus is no longer on the narrow issue of public danger, but whether a composite sentence exceeding the presumptive term is warranted under the totality of the circumstance." <u>Farmer v. State</u>, 746 P.2d 1300,1301-1302 (Alaska App. 1987).

Counsel concedes that the trial court can impose consecutive sentences for unrelated offenses. <u>Thomas v. State</u>, 566 P.2d 630 (Alaska 1977); <u>Mutschler v. State</u>, 560 P.2d 377 (Alaska 1970). However, in the instant case the offenses set forth in counts I & II are related and should have had concurrent time imposed. Simmons contends that the time imposed for counts III & IV should have been concurrent since they were related.

Simmons was 45 years old at the time of sentencing and a majority of the pre-sentence report was unverified. Simmons contends his offenses and record rise to the totality of the circumstances does not warrant a combined maximum forty (40) year term.

59

<u>CONCLUSION</u>

The trial court erred in many ways.  Given the record and the arguments presented, the case should be reversed and remanded to be re-tried before another judge.

SUBMITTED at Anchorage, Alaska on this 20 day of August, 1993.

Randall S. Cavanaugh
Co-Counsel for Appellant

Ex. D, p. 79